# Delaware, Lackawanna and Western Railroad Company *versus* Sanderson, et al.

1. A. entered into a written agreement with B., " leasing " to him " all the coal beneath the surface of a certain tract of land," of which A. was the owner. B. covenanted to mine and remove in each year at least a certain number of tons, and to pay therefor, whether mined or not, a specified sum per ton, unless mining was prevented by certain specified contingencies. Failure to pay for thirty days gave the " lessor " the right of distress, and for sixty days, if there were no goods subject to distress sufficient to pay the royalty, the lease could be forfeited at the option of the " lessor," who could re-enter without action at law. The " lease " was made " perpetual until all the coal is mined," and the rights conferred by the lease were extended to the heirs, executors, administrators and assigns of the respective parties. B. covenanted to pay all taxes on coal mined without recourse to A. to refund the same. In an action by B. against A. to recover taxes levied on the coal in place and paid by B. under protest—*Held :*

(1) That the agreement was not a lease but an absolute sale of the coal in place, and operated as such a severance of the surface and subjacent strata as would render the vendee liable for all taxes levied upon the coal in place, and would relieve the vendor from liability for same.

(2) That such liability arises from the nature of the estate granted, and the vendee is not relieved therefrom, on the principle *inclusio unius est exclusio alterius*, by his express covenant to pay all taxes on the mined coal.

2. Sanderson *v.* City of Scranton, 9 Out., 469, followed.

April 16th, 1885.  Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, and CLARK, JJ. GREEN, J., absent.

ERROR to the Court of Common Pleas of *Luzerne county:* Of January Term 1885, No. 475.

This was a case stated, wherein the Delaware, Lackawanna and Western Railroad Company and the Delaware and Hudson Canal Company were plaintiffs, and George Sanderson et al. were defendants.  It was brought to recover the sum of. $169.74, being the amount paid by plaintiffs under protest for county, city, and school taxes on certain coal lands in Lackawanna county, of which plaintiffs were the occupants under an instrument of writing denominated a lease executed by defendants.

The instrument set forth that Sanderson et al., the parties of the first part, " do hereby lease unto the said John Jermyn, party of the second part, all the coal beneath the surface of a certain tract of land, containing about 224 acres, more or less, except as hereinafter provided," etc.  [Here followed the description of the property.] . . . . . " The said John Jermyn under this indenture is to have the right to mine the coal and remove the same from beneath the surface of that said tract of land, or part thereof, hereinabove described, upon the terms and conditions and subject to the restrictions hereinafter mentioned.

" In consideration of the grant or lease aforesaid, the said John Jermyn hereby covenants and agrees for himself, his heirs and assigns, that he will at his own proper cost and expense, mine and remove such veins of coal as are beneath the surface of said tract of land, and to mine it in a good and workmanlike manner as is hereinafter provided for."

The party of the second part covenanted to mine at least 65,000 tons of coal yearly, and to pay 25 cents per ton for same, whether mined or not.  The maximum quantity was unlimited.  Faults in the coal, casualties and strikes which prevent mining excused the parties of the second part from the payment of the royalty for the time being.  Default of payment or failure to mine for six consecutive months should be taken as an abandonment of the rights of the party of the second part.  The agreement further provided :

" And should the royalty herein agreed to be paid remain

unpaid for thirty days, the said parties of the first part shall have the right to distrain any of the goods and chattels of the party of the second part or his assigns, found upon said premises or adjoining premises in possession of said party of the second part; and should the same remain unpaid for a period of sixty (60) days after it is payable, and there is not property liable to distress sufficient to pay the royalty due, then the parties of the first part shall have the right to declare this lease wholly and absolutely forfeited, and may enter and repossess themselves of said coal hereby leased, either with or without legal proceedings.

"The said party of the second part also covenants and agrees to pay all government imposts and assessments, United States, state, county and local taxes upon the coal mined under this lease, without recourse or claim on the parties of the first part to refund any part of the same.

"And it is also understood that the true meaning of this lease is to make it perpetual until all the coal under the tract of land herein described is mined, subject to the foregoing limitations and restrictions.

"The rights and privileges herein conferred shall extend to the heirs, executors, administrators and assigns of the respective parties hereto, and the covenants and obligations herein shall be binding on them as well. But no assignment of this lease by the lessee shall be taken to discharge him from his covenants and obligations, except with the written consent of the lessors."

John Jermyn assigned his interest under said indenture or agreement to the plaintiffs, who in 1885, under a decision of this court, paid under protest the county, city and school taxes which had been assessed against the mined coal covered by the above agreement. [See Sanderson v. City of Scranton, 9 Out., 469.]

This action was brought to determine whether defendants were ultimately liable to pay said taxes.

The court below (HAND, P. J.), entered judgment for defendants, filing, *inter alia*, the following opinion :

A review of the cases above cited, and every case decided in our higher court, shows there are three general principles which have been laid down, which are as follows : In order to create a conveyance absolute, (1) the right must be exclusive in the vendee, (2) of all the coal, and (3) he must be compelled to mine, or what is the same thing, pay for the coal if not mined. It would be very desirable if these rules could be judicially settled by our higher court as determining a severance of the coal from the surface, sufficient to create only a corporeal hereditament, and that when we come to the deter-

mination of the quantity of the estate thus created a fourth
principle could be enunciated, that the conveyance must con-
tain apt words or clear and distinct words, sufficient to create
a fee or absolute sale.   The confusion in the law arises more
from the inartistic form of the so-called leases than from any
principles which our court has as yet laid down.   We appre-
hend also that the disastrous results which are supposed to fol-
low the decision in the case now in review, are more imaginary
than real if these four rules obtain.   We shall refer to them
hereafter.   There is some confusion which arises out of the
different kind of rights relating to mining.   We have (1) a
conveyance of coal where there is a severance, (2) a sale (pos-
sibly) of all the coal in form where the possession or reten-
tion of the title remains in the grantor, amounting to a right
to take all the coal, (3) a lease of the coal, and (4) a license.

As we read the decisions of our courts all four of these
seem to have been recognized: Caldwell *v.* Fulton, 31 Pa.
St., 475, is an instance of the first; Grove *v.* Hodges, 5 P. F.
S., 504, of the second; Turner *v.* Reynolds, 11 Harris, 206, of
the third; and the case of a mere license is where it is revo-
cable at the will of the grantor, and the right is exercised in
common with him.   It is probable that so far as coal leases so
called are concerned the rights could all be adjudicated and
protected by a classification which puts them under the head
either of a conveyance or a lease.   A conveyance is valid in
Pennsylvania, and secures the consideration therefor when it
is made subject to the purchase money: Price on Limitations
and Liens, 240; and a conveyance in fee, or rather a title sub-
ject to a "royalty," is no more anomalous than a ground rent.

A mining lease reserving rent whether for years, at will, or
perpetual, (if by perpetual is meant a time necessary to ex-
haust the coal, which is a term less than the estate of the
grantor if he holds the fee, and while not for a present known
determinate period,) ought not to be an impossibility under
our law.   All rights of the lessor to his rent may be preserved
by the right of re-entry, even against a mortgagee and still
preserve the mortgage itself.   A right of forfeiture would be
controlled by equity, where equity demands it.

Assuming then that under proper principles of law an in-
strument is determined to be a conveyance or a lease, what
injury is done provided those principles are definite and clear
so that from them it can be determined which the instrument
is?   If any individual has taken a mortgage on a leasehold
interest supposing it to be a fee simple, the same thing has
occurred outside of the mining regions.   Suppose the coal by
an instrument goes to the heirs of the vendee and the con-
sideration or royalty passes to the executor and not the heir,

does the law worry itself over that any more than it does over a sale of land by contract? These considerations we think meet the ill effects to be apprehended by the learned counsel for the plaintiff in this case. We deem the case of Caldwell *v.* Fulton goes much farther than the learned counsel claim. It is one of the grand leading cases in our law, and settles not only the possibility of a severance of the coal from the surface with a fee simple in each, thus protecting mining rights and giving them value, but it, so far as it goes, gives two easily understood and clean cutting principles, to wit : the grant must be exclusive and for all the coal. Then comes the other principle, enunciated in Clement & Masser *v.* Youngman & Walter, 4 Wr., 341, that there must be an obligation or covenant to take the coal, and we have three principles which protect all rights so far as they can be protected by general law. If for any case the law is too general, then equity can interfere where it is deficient.

In view of the value of these principles, their simplicity, their easy application, we are unwilling, after a full and careful examination, to gratify our pride by giving our influence toward a reversal of Sanderson *v.* City. It is a case, as Judge CLARK says, not free from doubt, but it is a case where all the coal is leased, where it is exclusive in the grantee, and he is compelled to mine or pay if he does not mine—the three criteria referred to above.

Judgment was accordingly entered for defendants. The plaintiffs thereupon took this writ of error, assigning for error the said entry of judgment.

*Geo. R. Bedford* and *J. Vaughan Darling,* (with them *E. P. Darling, A. T. & A. H. McClintock*), for the plaintiffs in error.—With the decision of Sanderson *v.* City of Scranton, 9 Out., 469, we do not necessarily differ. It was there rightly decided that as between the taxing power of the city and those in possession the primary liability to pay taxes was unquestionably upon the latter. But the right of the lessees to have recourse to the lessors for the repayment of taxes so paid is a different question. The liability of the defendants in error depends upon (1) the specific covenant in the lease, and (2) the character of the estate. As to the first we would say that as the lease expressly specifies that the lessees are to pay taxes as *mined* coal, all taxes not provided for, such as taxes on unmined coal, were taxes which, when paid by the lessee, the lessor should repay on the familiar principle that " *inclusio unius est exclusio alterius."* With reference to the second ground, we submit that the court erred in holding in Sanderson *v.* City, *supra,* that the instrument operated as an absolute sale of the

premises.  This decision is against authority.  In the cases of
Caldwell *v.* Fulton, 31 Pa. St., 475 ; Benson *v.* Miners' Bank,
8 Harris, 370, and Scranton *v.* Phillips, 13 Norris, 22, there
were technical and apt words for the creation of a fee.

The remaining cases do not sustain Sanderson *v.* City of
Scranton, supra.  On the other hand, the status of coal min-
ing leases has long been settled by legislative recognition and
by judicial interpretation.  These instruments have always
been recognized in the body of our statute laws as leases.  By
the Act of April 27th, 1855, P. L., 369, Purd., 486, and the
supplementary Act of April 3d, 1868, P. L. 57, Purd., 486,
and May 13th, 1876, P. L. 160, Purd. 2004, leases of "min-
ing lands" were made subject to mortgages, executed and
recorded in the manner therein provided, with the same
effect as freehold estates, and such mortgages were made en-
forceable by the same remedies as mortgages upon freehold
estates.  But if such instruments were, in reality, grants of
freehold estates, these enactments were worse than useless and
foolish.  Nor has judicial recognition been less distinct.  In-
struments similar to the present one were held to be leases in
the following cases: Miners' Bank *v.* Heilner, 11 Wr., 452 ;
Trout *v.* McDonald, 2 Norris, 114 ; Effinger *v.* Lewis, 8 Casey,
367 ; Offerman *v.* Starr, 2 Barr, 394 ; Greenough's Appeal, 9
Barr, 18 ; Griffin *v.* Fellows, 32 P. F. S., 114 ; Moore *v.* Miller,
8 Barr, 283 ; Spencer *v.* Kunkle, 2 Grant, 406 ; Sheets *v.*
Allen, 8 Norris, 47 ; Winton's Appeal, 1 Out., 385.

*George Sanderson, Jr.,* for defendants in error.—The
case is ruled by Sanderson *v.* City of Scranton, 9 Out., 469.
The lease is the same, and the questions raised here were
there found upon and adjudicated after a careful consideration
by this court and in an elaborate opinion.  *Stare decisis.*

Mr. Justice TRUNKEY delivered the opinion of the court,
October 5th, 1885.

These plaintiffs were not parties in the case of Sanderson *v.*
City of Scranton, 9 Out., 469, and therefore are not bound
by the adjudication.  The sole question in that case is the
controlling one in this, namely, whether the deed dated
May 10th, 1875, by Sanderson and others to Jermyn, "is a
lease, properly so called, or virtually a sale of the minerals in
place."  Notwithstanding the very able and ingenious argu-
ment of the plaintiffs' counsel we are not convinced that there
was error in the interpretation of the deed.  Nothing can be
added to the opinion of Justice CLARK in support of the con-
clusion "that there was such a severance of the surface from
the underlying strata as created a divided ownership in these
distinct portions of the land."

[Railroad Co. *v.* Sanderson.]

It may not be amiss to remark some of the points of the plaintiffs' argument. At present no question arises respecting the grantors' security for the purchase money, nor of their power to subject their right under the deed to the lien of a mortgage. Nor is it a part of the case that the great body of coal lands in the Commonwealth are held under similar instruments. And if they are so held the real question remains as to the nature of the estate vested in the grantees.

In this instrument the operative word of the grant is "lease," which signifies to grant the temporary possession of the subject, but in another part, it is provided how long that possession shall continue. "In consideration of the grant or lease aforesaid" the grantee or lessee agrees to pay a certain sum per ton; the mode of ascertaining the number of tons, the times of making payment, and the minimum quantity to be paid for annually, are well defined. The money to be paid is called "payment," "price or royalty," and "royalty," but the meaning would be the same were the price to be paid for the coal called "rent." The stipulated remedies in case of default in payment, are consistent with either a sale or lease, but were the instrument a lease some of them would exist if not therein expressed. When the parties omit to name a term, do not create a lease at will, nor a lease for life, though much of their contract is expressed in words peculiar to a lease, the whole instrument must be taken into view to ascertain the intent. Where it is clear that the owner of a tract of land grants the right to take all the coal beneath the surface, and the grantee obligates himself to mine and remove all said coal and to pay a certain price per ton each month for all coal mined, not less than a named quantity to be mined and paid for every year, the contract to be binding until all the coal under the tract is mined, and the rights, covenants and obligations are made binding on the parties, their heirs and assigns, and executors or administrators, there is an actual sale of the coal. It is none the less a sale, if the parties called the deed a lease, and styled themselves lessor and lessee, and contracted that in case of non-payment of the "royalty" the grantor should have the right of distress, or at his option the right to forfeit the grant. A deed on such terms is not a lease at will, nor for a term of years, nor for life. It cannot be limited to the life of the grantee, for should all the coal not be mined at the time of his death, his rights and obligations do not die with him.

Leases are generally for a term of years. If for a long term, as a hundred years, though of greater value than if for the life of the grantee, the estate is inferior. The entire body of coal under a tract of land may be embraced in a lease, and

the term be so long that in all probability the lessee will mine the whole of the coal. Yet a term of years is a chattel, a transient interest in the land. A lease for the life of the lessee vests in him a freehold. A lease of a mine, whether for a term of years or for life, implies the possibility, if not the probability, of its reversion. That the mineral may be partly or wholly exhausted before the end of the term is a result involved in the contract. It is not pretended that the instrument in question is a lease for life. No particular period is named for the duration of a tenancy. Then if it is a lease the tenancy is from year to year. Such tenancy is contrary to the plain intent. The subject of the grant is coal, nothing else save some necessary incidents for mining, and when the grantee shall have performed his covenants there can be no reversion.

It may have been believed, as the plaintiffs allege, that instruments of this character, by settled construction, are mere leases, but we have not been advised of the authority settling such construction. In support of this allegation it is said that these instruments have been recognized as leases in the body of our statutes, and reference is made to the Act of April 27th, 1855, P. L., 369, and its supplement of April 3d, 1868, P. L., 57, relative to the mortgaging of leaseholds; but that statute expressly applies to "every lessee for a term of years." It embraces no lease that vests a freehold. Nor an absolute grant of the whole body of mineral. Again, it is averred that judicial recognition of such instruments as leases, has been distinct and emphatic, and reference is made to Miners' Bank *v.* Heilner, 47 Pa. St., 452; Effinger *v.* Lewis, 32 Id., 367; Offerman *v.* Starr, 2 Id., 394; Griffin *v.* Fellows, 32 Sm., 114; Greenough's App., 9 Pa. St., 18; Trout *v.* McDonald, 83 Id., 144; and Winton's App., 97 Id., 385. Each of the first four of these cases related to a lease expressly for a term of years, Greenough's Appeal to a lease determinable on one month's notice by either party, and in each of the last two cases no question was made respecting the nature of the instrument, and the report does not show that it was not a lease for years. These cases seem to have no bearing upon the proper construction of the instrument in hand. They recognize the fact that a valid lease may be made of a mine; here the defendants deny that the mine was leased.

In Sanderson *v.* City of Scranton, the right of the owner of a tract of land to lease all the coal under the surface is not gainsaid. Nor is it alleged that in Scranton *v.* Phillips it was decided that the instrument was not a lease, but the remark of the Chief Justice was referred to as evidencing that it was deemed more than a lease. In the late case of Stoughton's

Appeal, 88 Pa. St., 198, the instruments were leases, each was for a term of years, of land for the purpose of producing or mining oil.  It was held that the guardian of a minor, without the approval of the Orphans' Court, had no power to lease the lands of his ward for mining purposes, as in effect it would be a grant of a part of the corpus of the ward's estate.  One of the leases having been properly approved, was held valid. The validity of leases of mines has been uniformly recognized by the courts in this Commonwealth.  There is a marked difference between a chattel and a freehold—estates created by leases are not all of the same nature.  Where by the terms of the deed the ownership of the mineral therein described is vested in the grantee, he is entitled to the benefits and is subject to the burdens incident to its ownership.

It is contended that even if there was a sale of the coal, that the provision in the deed relative to taxes on the mined coal implies that the grantors shall pay the taxes on the unmined.  The plaintiffs say that at the time of the execution of the deed there had been a tax upon the coal itself when mined, and doubts existed whether the tenant was not authorized to deduct such tax from the royalty or rent.  This explains why the provision was inserted.  At that day, probably, the parties had no thought that unmined coal was taxable as real estate separate from the surface.  Their intent must be ascertained from the language in the deed.  They meant to insert many covenants similar to covenants usually inserted in leases.  In a matter of so much importance had they intended to create a leasehold—a chattel—they would have limited the estate to a "determinate period."  "The estate of a lessee for years is called a term, *terminus*, because its duration is limited and determined; for every such estate must have a certain beginning and a certain end."  Where the subject and purpose of the grant involve the mining and removing of the entire thing granted, to be held by the grantee and his heirs until it shall be so mined and removed in accord with his covenants, how can it be said that he takes a term?  What can be more uncertain than the date when the subject shall be exhausted?  What greater estate in the mineral underlying the surface of a tract of land, can a man have than the right in himself, his heirs and assigns, to mine and remove the whole of it?  If his title is burdened with covenants and conditions insuring his payment of the purchase money, the burden does not affect the nature of the estate.

We are of opinion that there is no express or implied covenant obligating the grantors to pay the taxes assessed on the coal as land, the property of the plaintiffs.

Judgment affirmed.