# Davis v. Hartel, Appellant.

*Landlord and tenant—Lease—Lodger or tenant—"Housekeeping apartment"—Assignment of lease—Refusal of possession.*

1. Where the owner of a large three-story building partly occupied for business purposes and as a residence by the owner, executes an instrument in writing by which she "rents" to another a "housekeeping flat," described as "consisting of a dining room, kitchen, bedroom and sitting room, all furnished, including heat, and light and gas for cooking," for a term designated, and at a rental stated, with right of renewal, the instrument creates the relation of landlord and tenant, and if the lessee pays the rent in full for the whole term, and before taking possession assigns the lease to another person, the assignee has the right to the possession, and if he is excluded he may recover damages therefor from the lessor.

2. In such a case the fact that the lessor used a part of the premises as her own residence, and that this part and the portion leased were reached by a common doorway and hall does not change the character of the instrument, and make it a mere contract between a keeper of a hotel or boarding house and a lodger.

3. The assignee of the lease may, in such a case, maintain an action in his own name to recover damages from the lessor for refusing to admit him to the possession. The measure of damages is the rental value of the premises.

Argued Nov. 17, 1913. Appeal, No. 287, Oct. T., 1912, by defendant, from judgment of C. P. Del. Co.,

March T., 1909, No. 67, on verdict for plaintiff in case of Harry M. Davis, Assignee of J. V. Slaughter, v. Eliza C. Hartel.   Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ.   Affirmed.

Assumpsit for refusal to admit plaintiff to possession of demised premises.

At the trial the jury returned a verdict for plaintiff for $829.50.

Subsequently on a rule for judgment n. o. v. BROOM-ALL, J., filed the following opinion:

On September 17, 1908, the defendant executed the following writing: "Agreement made this day whereby Mrs. Eliza Hartel rents to J. V. Slaughter the housekeeping flat in house, Lansdowne and Baltimore Avenue, consisting of dining room, kitchen, bedroom on North side of house, and sitting room on South side, all furnished, including heat and light, and gas for cooking, for a period of sixteen months, beginning Oct. 1, 1908, ending Feb. 1, 1910, for a sum of one thousand dollars. Receipt of same is herein acknowledged.   At expiration of this lease, unless thirty days' notice is given, it will continue for a further period of a month at a rental of fifty dollars a month and so on from month to month, unless either the lessee or lessor give thirty days' notice.

"As a part of this agreement the said Mrs. Eliza C. Hartel for herself, her heirs and executors, will not sell or rent or allow to be sublet any store or premises in Lansdowne on Baltimore Avenue and Landsowne Avenue for a drugstore for a period of two years."

The plaintiff having proven and introduced the above contract in evidence proved an assignment of it by J. V. Slaughter to the plaintiff under date of October 1, 1908.

The first question which arises is, as to whether the above contract is a lease, or whether it is an agreement personal to Slaughter.   About this there would seem to

be little room for difference of opinion. She says in it that she rents the property. She calls it a housekeeping flat. She rents it in a furnished condition. She designates the rooms by occupation names: dining room, sitting room, kitchen and bedroom, and she agrees to provide heat, light and cooking, gas for occupation. The paper specifies a term, with a specific beginning and ending. It reserves a definite rent. It provides for renewal, and in this connection the document is called a lease. No particular form of words is necessary to constitute a lease. "Whatever words show an intention on the part of the lessor to dispossess himself of the premises, and on the part of the lessee to enter and hold in subordination to the lessor's title are sufficient:" 18 American & English Ency. of Law (2d ed.), 605; Watson v. O'Hern, 6 Watts, 362; Steel v. Frick, 56 Pa. 172; Noll v. Kline, 1 Del. County, 101.

It is not necessary that the term lease should be used: Moore v. Miller, 8 Pa. 272.

All of the requisites of a lease are contained in the writing: Bussman v. Ganster, 72 Pa. 285.

We, therefore, conclude that this contract is a lease.

It is not a mere personal license. An agreement for the occupation of rooms in a clubhouse for a term, in consideration of a certain sum and services is a lease; Kunkle v. Philadelphia Rifle Club, 10 Phila. 52.

Apartments in a house may be leased: 2 Leading Cases on the American Law of Real Property with notes by Sharswood and Budd, 57.

The next question which arises is, whether the lease is assignable, so as to enable the assignee to sue in his own name. The legal proposition is stated to be, "In the absence of an express restriction either by contract or by statute, the right of the tenant to assign his leasehold estate is incident to every tenancy either for life, for years, or from year to year, and it is not necessary that the lease run to the lessee and assignee:" 13 American & English Enc. of Law (2d ed.), 659.

But it appears that Slaughter made no entry on the demised premises, prior to his assignment to Davis. At common law a lease was not complete until entry by the lessee. Before such entry his right was an interest in the term, interesse termini: Sennett v. Bucher, 3 P. & W. 392; Williams v. Downing, 18 Pa. 60; Carnegie Nat. Gas Co. v. Philadelphia Co., 158 Pa. 317. But this interesse termini may be granted or assigned by the lessee: 1 Washburn on Real Property (ed. 1860), p. 296.

We, therefore, conclude that the plaintiff became possessed, by virtue of the assignment, of the right to the demised premises.

It appeared that the defendant refused to allow the plaintiff to occupy the demised premises. Hence this suit was brought to recover the loss thus sustained. The question of the value of the term was submitted to the jury under all of the evidence, who rendered a verdict for the plaintiff for $829.50.

The defendant's contention was:

1. That the contract of September 17, 1908, was personal to Slaughter, and therefore could not be assigned to another. We have considered this question above and from the construction of the writing, in the light of the authorities above cited, we have concluded that this defense is not good in law.

2. That there was fraud, accident or mistake in the execution of the contract, which requires it to be reformed, leaving out of it the part referring to the renting of rooms.

3. That there was a stipulation entered into, a condition annexed or a promise made, contemporaneous with the execution of the contract, that the part thereof referring to the renting of rooms should be without binding force.

The evidence respecting the latter two contentions was substantially this: Slaughter was the occupant of a drugstore in Lansdowne avenue and Mrs. Hartel owned a property on the opposite corner. Two young men by

the name of Brown and Jessup had applied to Mrs. Hartel, soliciting her to build a drugstore on her property and rent it to them. Then Mrs. Hartel and Slaughter had a conversation in which he said he would not mind paying $200 to keep Brown and Jessup from coming in; and she said that it would be well for him to give her $1,000, to stop them from having a drugstore there. He said they would have another interview. The interview took place, he offered $200 to keep them out, then raised it to $500, then to $800, and a loan to her of $200. She declined anything less than $1000. Then he said, "If I give you $1,000, you agree not to let Brown and Jessup have this place for a drugstore?" She said, "Yes." Then he said, "Haven't you some rooms, just so we can call this $1,000 room rent?" She said, "I wouldn't like to call it room rent." Then he said "We will just use that word room rent for a bluff." He said "Show me some rooms, just let me look at some rooms." Then she showed him some rooms. An agent for Slaughter, subsequently on the same day, presented to her the agreement for her signature, with a $1,000 check. She said, "I don't like this question of room rent in this contract." The agent said that Slaughter said that you and he thoroughly understood that between yourselves. This evidence was substantially supported by two witnesses.

It is to be noted that this evidence does not indicate that anything was omitted from the agreement by fraud, accident or mistake, neither does it show any promise made by Slaughter, nor a stipulation or condition, upon the faith of which Mrs. Hartel executed it. What is set up is something directly contravening the writing. Under such circumstances the writing is the sole evidence of the agreement: Martin v. Berens, 67 Pa. 459. If there had been such promise, stipulation or condition, and if she had signed the paper upon the faith of it, parol evidence would be admissible to reform the contract: Greenawalt v. Kohne, 85 Pa. 369; Fidelity & Casualty Co. v. Harder, 212 Pa. 96; Keller v. Cohen,

217 Pa. 522; Gandy v. Weckerly, 220 Pa. 285. It might be surmised that she would not have signed a paper understanding it to be an actual lease, but she does not say so, and the burden here is upon her, and the weight of the burden must be lifted by evidence, clear, precise and indubitable.

The propositions of law are these:

1. Writings may be reformed by parol evidence of fraud, accident or mistake in the execution of them, and the evidence of the fraud, accident or mistake must be clear, precise and indubitable, and supported by two witnesses or their equivalent.

2. Parol evidence may be received to prove a stipulation entered into, a condition annexed or a promise made, upon the faith of which the writing is executed.

3. And this although it may vary and materially change the terms of the contract, and in such case the proof must conform to the equitable requirement.

Manifestly the case in hand does not come within the first class. As was said by STEWART, J., in Croyle v. Cambria Land & Imp. Co., 233 Pa. 310, "Admittedly both parties knew exactly what the deed of release contained, and all that it contained before it was signed and sealed. This left no possible grounds for reformation. As written, untainted by fraud, and standing clear of mistake, it was the contract of the parties to be by each accordingly observed."

The case must be treated as one under the second and third heads. If Slaughter had promised the defendant not to occupy the demised premises, and if she had signed relying upon his observance of such promise, his repudiation of it would be a fraud against her, against which she could be protected. What he did say was that the demising clause was a bluff. This is an equivocal expression. As interpreted in the light of their conversation, it apparently meant that the demising clause was to serve as a warrant for the payment of $1,000, and relieve him from the criticism of

paying money and contracting directly for the exclusion of a competitor. Hence the greater the verity of the demise, the better it served its purpose, and the greater the bluff. The bluff was not to operate on the parties, for the exclusion of the competitor was expressly mentioned. The pretense was to be made to the public, who might learn that he had paid her money, and who would see him occupying her premises and would naturally conclude that the money was paid as rent.

In short, Mrs. Hartel knew what she was signing and there was no fraud, accident or mistake in the execution of the writing.

And there was no promise made by Slaughter not to occupy the premises, and she did not therefore sign the paper upon any such inducement.

The foregoing disposes of all the questions urged by the defendant in support of her motions, and entertaining the views expressed, we deny defendant's motions for judgment non obstante veredicto and for a new trial.

*Error assigned* among others was in refusing judgment for plaintiff n. o. v.

*Charles L. Smyth,* for appellant.—There was no relation of landlord and tenant between the parties: Wilson v. Martin, 1 Denio (N. Y.), 602; White v. Maynard, 111 Mass. 250.

It was error for the court below to allow recovery by Davis as the legal plaintiff: James v. Kurtz, 23 Pa. Superior Ct. 304; Rosenberger v. Hallowell, 35 Pa. 369; Blume v. McClurken, 10 Watts, 380.

*Fred Taylor Pusey,* with him *A. Culver Boyd,* for appellee.

OPINION BY RICE, P. J., April 20, 1914:

The material parts of the lease involved in this litigation and the nature and facts of the case are

clearly set forth in the opinion of the learned trial judge and need not be restated. The appellant's contention is that the principle of law which rules the case is that where a person occupies a dwelling house and rents rooms to another, the latter is a lodger, and as the former has a right to select the lodgers in his dwelling house, an assignment by the lodger is not valid without the consent of the landlord. It is true as a general proposition that when one contracts with a keeper of a hotel or boarding house for a room and board, whether for a week or year, the technical relation of landlord and tenant is not, without more, created between the parties: Wilson v. Martin, 1 Den. (N. Y.), 602. So in White v. Maynard, 111 Mass. 250, it was held that an oral contract by the keeper of a boarding house to provide a man and his family for six months with board and with three specified rooms as lodgings, and to light and heat the rooms, was not within the statute of frauds. These two cases are particularly relied on by appellant's counsel but they are plainly distinguishable from the present in their facts and do not sustain the proposition that the grantee in the instrument in question acquired the mere personal rights of a lodger. The distinction was pointed out by Justice Grey in the latter case. After reviewing many of the English and American decisions relative to the rights of a mere lodger he cited cases to the effect that an entire floor, or a series of rooms, or even a single room, may doubtless be let for lodgings, so separated from the rest of the house as to become in fact and in law "the separate tenement of the lessee." And this is the generally recognized doctrine. Thus in Taylor on Landlord and Tenant (9th ed.), sec. 66, it is said: "The growing frequency of the occupation of 'flats' or 'suites'—subdivisions of a house or other entire structure—has given rise to many questions in determining whether the occupant is a tenant or not; that is, whether he has an interest in the realty, or only a personal contract.

While there can be a tenancy of real estate, though in a single room, or in furnished rooms; yet this can only be created by clear terms of demise." In the same connection the learned author cites the decision in Stamper v. Sunderland, L. R. 3 C. P. 388, which has been followed by other courts, that ordinary flats are as much separate dwellings as adjoining houses, and it makes no difference whether the structure is divided vertically or horizontally. The principle is applicable here. The instrument in question contained clear words of demise; it was designated by the parties as a lease of the premises; it reserved a certain rent; it specified a term with a certain beginning and ending; and provided for a renewal. The subject-matter is described in the instrument as a "housekeeping flat" consisting of dining room, kitchen, bed room and sitting room. There is no ground for inferring that in so describing the premises the defendant made a mistake in the use of terms; on the contrary, there is evidence that she declared that when she built the building "it was arranged for an apartment house to rent if she needed money." Moreover, this housekeeping flat was not in a mere private dwelling house. It was on the second floor of a large building at the corner of two streets, used in part for business purposes. On the first floor was a grocery store with a large parlor in the rear. True, this parlor with part of the second story was occupied by the defendant as her residence. But this latter fact, when considered in connection with the other facts and the terms of the lease, does not militate against the conclusion that the housekeeping flat was intended to be leased as a distinct tenement as fully and completely as if the other parts of the second floor had been leased to another tenant. Nor is this conclusion prevented by the fact that the defendant's rooms on the second floor and the apartment leased were reached by a common doorway and hall. See Swain v. Mizner, 74 Mass. 182, in which it was held that where a building is leased in

distinct portions to several tenants who have exclusive occupation and control of their respective tenements, and use in common the entry and stairway, an officer who has entered through the outer door of the house into the entry has no right to break open the door of one of the tenants. This was put upon the ground that each separate tenement was a dwelling-house. The evident intention of the parties to the instrument in question here was that the lessee should have the exclusive possession and control of the premises leased, and there is nothing in the evidence to warrant the inference, contrary to the form and terms of the written instrument, that he should have only the rights of an ordinary boarder or lodger. The defendant had a right to set apart a portion of her building as a housekeeping flat and to lease it as such. This is what the instrument shows she intended to do and no good reason can be assigned for not giving effect to her intention. We concur with the learned trial judge in the conclusion, which is well supported by the reasoning of his opinion, that the instrument, if perfected by entry, would have amounted to an actual demise and would have given the occupant all the possessory rights of a tenant.

This being so, and there being nothing in the lease restrictive of the rights of the lessee in this particular, the assignability of the term after entry and of the interest of the lessee before entry logically follows. The power of assignment is incident to the estate of every lessee unless it is restricted by the terms of the lease: Greenaway v. Adams, 12 Ves. 395. It exists without the use of the word "assigns:" 24 Cyc. L. & P. 962; 13 Am. and Eng. Ency. of Law (2d ed.) 659; Williams v. Downing 18 Pa. 60. Whether the term is to commence immediately or at a future date the interesse termini at once vests in the lessee upon the execution of the lease. And an interesse termini is a marketable interest assignable at law: Lock v. Furze, 19 C. B. (N. S.) 96, 120; Taylor on L. & T. (9th ed.) sec. 15. Applying these

general principles to the facts of the case, the conclusion follows that the plaintiff (Davis) acquired by the assignment the interest that had been granted to the lessee (Slaughter) in the premises, and this right or interest, thus vested in him, entitled him to maintain an action in his own name to recover damages from the defendant, the lessor, for refusing to admit him to the possession. The amendment substituting him as legal plaintiff, instead of use plaintiff, does not materially change the cause of action as set forth in the statement of claim, and was properly allowed. Inasmuch as the rent for the entire term was paid at the execution of the lease, the court committed no error in admitting evidence of the rental value of the leased premises and allowing recovery in that amount, it being less than the sum stipulated in the lease. Indeed, we know of no other measure of damages that would have compensated the plaintiff for the loss he sustained by the defendant's refusal to admit him into possession. See Riley v. Hale, 158 Mass. 240.

We have carefully examined all of the authorities cited in the brief of the learned counsel for the appellant and do not find that the foregoing conclusions are in conflict with any of them. All of the questions raised on this appeal, as well as other subsidiary ones which arose on the trial, were correctly decided by the learned trial judge and the decision of the case might well be rested on his opinion.

The assignments of error are overruled and the judgment is affirmed.