## Morrisville Shopping Center, Inc. *v.* Sun Ray Drug Co., Appellant.

Argued January 6, 1955.     Before Stern, C. J.,
Stearne, Jones, Bell, Chidsey and Musmanno, JJ.

578

*Bernard Eskin,* with him *Wolf, Block, Schorr & Solis-Cohen,* for appellant.

*George F. Shinehouse, Jr.,* with him *T. Sidney Cadwallader, II, Grim, Cadwallader, Darlington & Clark* and *Zink, Shinehouse & Holmes,* for appellee.

OPINION BY MR. JUSTICE BELL, March 14, 1955:

Plaintiff is the owner of a newly developed shopping center in Morrisville, Bucks County. The center has facilities for about twenty stores with varying floor space and a substantial customer parking area.

One hundred and forty-seven retail drug stores in Pennsylvania, New Jersey, Delaware, Maryland and West Virginia are operated under defendant's name. In addition to a drug department and other characteristics of a modern drug store, these stores generally include a soda fountain and luncheonette, a tobacco department and also facilities for the sale of a large variety of commodities.

Plaintiff leased to defendant by written lease dated December 16, 1952, a store unit in the Morrisville center which was by its terms to include all of the above mentioned facilities. The premises were still under construction when the lease was entered into and were not completed until *October 9, 1953,* when the

store was opened and the 20 year term of the lease began. The rent payable by the tenant during the first five years of the lease was designated as five and one-half per cent of the gross sales (excepting tobacco), and the average rentals during this period determined the minimum rental for the second five years. The minimum rental for the last ten years was based on the average rentals during the first ten years. The lease prohibited (1) an assignment, mortgage, pledge or encumbrance of the lease; and (2) a subletting of the whole or any substantial part of the demised premises without the written consent of the landlord, except as otherwise provided in Article 4 thereof. The tremendous importance of the gross sales and in turn the merchandising ability of the tenant or sublessee is obvious and it is therefore easy to understand the reason for the subletting provision and the forfeiture provisions of the lease.

On *September 25, 1953,* about two weeks before the store opened, defendant entered into a written agreement with two individuals, William Bielitsky and Bernard Benjamin. The agreement was entitled *"Agreement of Sale".* It described the parties as "Licensor" and "Licensee" and provided, inter alia, for the *purchase* of the drug store at the Morrisville Center by Bielitsky and Benjamin, the purchase price being the total of invoices rendered to the "Licensee" for equipment, fixtures, stock, supplies and lighting. The record indicates that this total was $46,000; and after a down payment of $10,000., Bielitsky and Benjamin had five years in which to pay the balance.

On the same day, to wit, September 25, 1953, the same parties, namely, defendant and Bielitsky and Benjamin, entered into a *"License Agreement"* which authorized the "Licensees", Bielitsky and Benjamin, to use the name of "Sun Ray" and required them to make

all purchases from Sun Ray so long as the partners were indebted to the drug organization for other than current purchases of stock. This agreement states that Bielitsky and Benjamin were not the agents of Sun Ray for any purpose; that all employees were to be those of Bielitsky and Benjamin; and that the profits of the business "are the sole and exclusive property of Licensees [Bielitsky and Benjamin]".

On December 1, 1953, after having observed Bielitsky and Benjamin operating all but the minor portion of the leased premises devoted to the restaurant, the plaintiff gave five days' notice of termination to Sun Ray, alleging that the prohibition in the lease against subletting had been violated. On March 23, 1954, an amicable action and confession of judgment in ejectment was filed and judgment entered on the same day. Defendant now appeals from a refusal of the Court below to open the judgment.

The clause relied on by plaintiff to support its judgment is Article 10 which provides: "Assigning, Mortgaging, Subletting—(10) The Tenant agrees not to assign, mortgage, pledge or encumber this lease, or except as otherwise provided in Article 4 of this Lease, sublet the whole or any substantial part of the demised premises without first obtaining the written consent of the landlord. Tenant agrees that, in the event of any such assignment of this lease, or subletting, made with the written consent of the Landlord as aforesaid, it will nevertheless remain liable for the performance of all the terms, conditions and covenants of this Lease. Lessor agrees not to unreasonably withhold consent to this provision."

Defendant relies upon Article 4, the pertinent provisions of which are as follows: "Annual Percentage Rental—. . . (d) The Tenant agrees that the Landlord, or the Landlord's agents, may at all reasonable times

inspect, at Tenant's principal office, the Tenant's records of sales made by it in the demised premises and receipts of sales made therein by concessionaires and sublessees, if any, of the Tenant in said demised premises . . . . (e) In computing total sales for the purposes of this Article 4., *the Tenant shall take the total amount realized as a result of sales of merchandise made in the Tenant's store* in the demised premises, *by the Tenant, its* concessionaires and *sublessees, if any,** to which shall be added the following: . . .".

Plaintiff contends that neither Article 10 nor Article 4 allow either an assignment or a sub-lease without plaintiff's written consent and since this was admittedly never given, the covenant has been breached and the landlord can terminate the lease.

Defendant, on the other hand, contends that the relationship between it and Bielitsky and Benjamin was a license rather than a sub-lease; and that even if it were a sub-lease the provisions of the original lease with respect to sub-leases were so ambiguous that a forfeiture which is never a favorite of the law, should not be allowed. No contention is made by defendant that the landlord had consented to the arrangement or agreements it made with Bielitsky and Benjamin.

"A petition to open a judgment by default is addressed to the sound discretion of the Court below and is essentially an equitable proceeding ruled by equitable principles; and the decision of the lower Court will be reversed on appeal only when there has been a clear or manifest abuse of discretion: Downes v. Hodin & Kornfeld, 377 Pa. 208, 104 A. 2d 495, and cases cited therein": *McCune v. Gross,* 377 Pa. 360, 363, 105 A. 2d 367. See also: *Nissenbaum v. Farley,* 380 Pa. 257, 110 A. 2d 230. Consequently, we must examine the written

---

* Italics throughout, ours.

agreements and the evidence to determine whether they support the lower Court's finding that the "arrangement between Sun Ray and Messrs. Bielitsky and Benjamin constituted either a sub-lease or a pro tanto assignment of lease of a substantial portion of the premises in question"; and whether the lower Court clearly abused its discretion in refusing to open the judgment.

It is difficult to define a lease in terms which will fit all modern conditions; it may, we believe, be accurately defined as a conveyance or grant or demise of certain described land or tenement (usually in consideration of rent or other recompense) for a prescribed period or at will, but for a less time than the lessor hath in the premises: Cf. 2 Blackstone Comm. 317; *Ottman v. Albert Company,* 327 Pa. 49, 54, 192 A. 897; *Delaware, Lackawanna and Western Railroad Company v. Sanderson,* 109 Pa. 583, 589, 1 A. 394; *Offerman v. Starr,* 2 Pa. 394, 396; Tiffany, Landlord and Tenant Chapter 3 (1910); Archbold's Landlord & Tenant; Woodfall Landlord & Tenant (16th ed.) 132; Stern's Trickett on the Law of Landlord & Tenant §1 (1950); 2 Bouvier's Law Dictionary (8th ed. 1914), page 1887; Black's Law Dictionary (4th ed. 1951) page 1035.

". . . no particular form of words is necessary to constitute a lease and . . . any writing is sufficient which establishes the intention of one party voluntarily to dispossess himself of the premises, for a consideration, and of the other to assume the possession for a prescribed period: Bussman v. Ganster, 72 Pa. 285; Davis v. Hartel, 56 Pa. Superior Ct. 557, 559": *Schweitzer v. Evans,* 360 Pa. 552, 555, 63 A. 2d 39; Stern's Trickett on the Law of Landlord & Tenant §3.

"It is not necessary that the term 'lease' should be used . . . . If the words assume the form of a license,

covenant, or agreement, and the other requisites of a lease are present, they will be sufficient": *Moore v. Miller*, 8 Pa. 272, 283.

An examination of the so-called "Agreement of Sale" and the so-called "License Agreement" which must be construed together if reasonably possible, and a review of the record leaves no doubt that Sun Ray conveyed the use and possession of all but the restaurant portion of the demised premises to Bielitsky and Benjamin for a specified period.

By the so-called written Agreement of Sale dated September 25, 1953, between Sun Ray and Bielitsky and Benjamin, defendant Sun Ray purported to sell the drug store in question to Bielitsky and Benjamin. The so-called "License Agreement" of September 25, 1953, between Sun Ray and Bielitsky and Benjamin was a hybrid agreement which provided that Bielitsky and Benjamin were to possess and exercise complete control over the operation of the store and were entitled to all the profits therefrom except that they could not make purchases from anyone else until they were out of Sun Ray's debt, (except for money owed for current merchandise purchases). The terms of this so-called License Agreement were confirmed by William Bielitsky who deposed, inter alia, that not only did he and his partner have full responsibility for employing and paying employees of the store and paying their Social Security and Withholding Tax, but that maintenance of the premises was their sole responsibility. Bielitsky added that fire insurance policies covering the store name his partner and himself as the insured, that all taxes are paid by them and in their names and that no accounting of the profits from this business is made to Sun Ray. Further, Bielitsky and Benjamin filed a fictitious name certificate with the Prothonotary at Doylestown, Pa., stating that they were doing

business as "Sun Ray Drug Agency 559". It is immediately obvious that this was more than a License Agreement. The device or subterfuge of calling a sublease a license or any other name cannot suffice to change its real nature or the real agreement which the parties entered into, nor relieve them from the legal consequences of their agreements. See *United States v. Gratiot*, 39 U. S. 526; *Interstate Transit, Inc. v. Lindsey*, 283 U. S. 183; *Spector Motor Service, Inc. v. O'Connor*, 340 U. S. 602, 608; *Arrott's Estate*, 322 Pa. 367, 185 A. 697; *Armour & Co. v. Pittsburgh*, 363 Pa. 109, 69 A. 2d 405; *Murray v. Philadelphia*, 364 Pa. 157, 71 A. 2d 280; *Shirks Motor Express Corp. v. Messner*, 375 Pa. 450, 463, 100 A. 2d 913; *National Biscuit Co. v. Philadelphia*, 374 Pa. 604, 632, 98 A. 2d 182. It is clear that the relationship of Licensor-Licensee arose solely with respect to the use of the name of "Sun Ray" and not to the leased premises.

Although the original lease prohibits both assignments and sub-leases, other provisions of the lease make it necessary to determine whether this was a sub-lease or an assignment. The general rule deducible from many different authorities may be thus expressed: A sub-lease occurs when a lessee transfers all or part of the demised premises for a lesser term than he has in the premises or for the same term but for a different rent or upon different terms and conditions; an assignment is the transfer of the entire term or entire remaining term upon the same terms as are contained in the original lease, so that no reversion is left in the original lessee. Cf. Tiffany, Landlord and Tenant Chapter 15; 51 C.J.S. Landlord & Tenant §37(d); 32 Am. Jur., Landlord & Tenant §314; See also, *Girard Trust Co. v. Cosgrove*, 270 Pa. 570, 113 A. 741; *Drake v. Lacoe*, 157 Pa. 17, 27 A. 538; *McClaren v. Citizens Oil & Gas Company*, 14 Pa. Superior Ct. 167, 174.

Clause 6 of the "License Agreement" provides: "The term of this agreement shall be concurrent with the term of the lease held by Licensor". This Agreement also provides that "*Any sums reserved as rent* or otherwise *under the lease agreement* shall be paid by Licensees to Licensor on or before the fifth day prior to the date when the same shall become due and payable by Licensor". These provisions, if considered alone, indicate an assignment of the lease by Sun Ray. However, the so-called "License Agreement" contained additional covenants which (1) prohibited "Licensees" from engaging in a similar type of business, (2) gave the "Licensor" a right of re-entry for conditions broken, and, as we have pointed out, (3) required "Licensees" to make all purchases from Sun Ray while in its debt.

Moreover, this License Agreement also provided that the "license" was to be renewed on a three months basis and that Sun Ray could terminate the "license" during any renewal of the term. These provisions differing from the original lease and being for a shorter term and reserving to Lessor different rights, manifest an intention to sublet rather than to assign and constitute, under the above mentioned principles, a sub-lease rather than an assignment.

Sun Ray contends that Article 10 of the original lease read in connection with Article 4 does not so clearly prohibit sub-letting as to justify a forfeiture. We cannot agree with this contention. The Agreements may contain ambiguous language with respect to various provisions and their effect, but Article 10 clearly prohibits an assignment or a sub-lease without the written consent of Lessor, and Article 4 does not restrict or obscure this clear prohibition nor the landlord's option to terminate the lease to Sun Ray if the latter breached any of the terms or conditions of the

lease. Under this clear language, a contractual provision for forfeiture for sub-letting without the written consent of the lessor may unquestionably be enforced by a Court. *Stevenson v. Dersam,* 275 Pa. 412, 119 A. 491; *Zeigler v. Lichten,* 205 Pa. 104, 54 A. 489; *Shermer v. Paciello,* 161 Pa. 69, 28 A. 995.

Sun Ray further contends that the entry of judgment by confession was void because made after five days' notice of termination instead of after thirty days' notice as required by Article 19. Article 19 states in pertinent part: ". . . or if Tenant shall fail in the performance and observance of any of the other agreements, conditions and terms herein contained on its part to be performed or observed, and if such failure shall continue for Thirty (30) days after service of written notice by Landlord, . . . ; or, *if this Lease or Tenant's estate or any of Tenant's interest herein shall* (except as hereinbefore expressly permitted) *be transferred or pass to or devolve whether by operation of law or otherwise,* upon any one other than Tenant herein named, or in the event of any such attempted transfer or devolution; or in the event of the abandonment of the premises by the Tenant, *then* and in any of such events Landlord, at its option, may serve upon Tenant notice that this Lease and *the then unexpired term hereof shall cease and expire and become absolutely void* on a date specified in such notice, to be not less than Five (5) days after the date of such notice, and thereupon, and on the expiration of the time limited in such notice, this Lease and the term hereof granted, as well as all of the right, title and interest of the Tenant hereunder, shall wholly cease and expire and become void . . . ."

We are of the opinion that under the language of these Agreements and all the pertinent facts, the provision "if this lease . . . or any of Tenant's interest

herein . . . shall be transferred" is applicable and the five days' notice was sufficient.

The landlord and the tenant agreed that the Sun Ray Drug Company or its approved sub-lessee—not strangers—was to operate this store; the rent was based solely and completely on gross sales and the merchandising ability of Sun Ray (or its approved sub-lessee); and both parties realized that inferior or mediocre merchandising would substantially affect the rental and might bankrupt the landlord. Under these facts it would be inequitable to refuse to permit the landlord to terminate this lease and the Court below did not abuse its discretion in refusing to open the judgment.

The Order of the Court below is affirmed; appellant to pay the costs.