## JESSE HALL v. J. N. WHITE ET AL.

ERROR TO THE COURT OF COMMON PLEAS OF MERCER COUNTY.

123  95
158  114
123  95
200  624

Argued October 9, 1888—Decided January 7, 1889.

When a contract for the purchase of land is made by one in his own name, but in fact as the agent of an undisclosed principal, and the latter has entered into possession in pursuance thereof and made valuable improvements, the vendor may sustain assumpsit against the principal for the recovery of the purchase money.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK, WILLIAMS and HAND, JJ.

No. 180 October Term 1888, Sup. Ct.; court below, No. 50 June Term 1886, C. P.

On April 8, 1886, J. N. White, and others, heirs at law of G. W. White, brought an action of assumpsit against Jesse Hall, doing business as the Hubbard Mining and Manufacturing Company, to recover the purchase money of certain coal property. The defendant pleaded, non assumpsit, payment with leave.

At the trial on March 29, 1888, it appeared that on January 2, 1883, the defendant, residing at Hubbard, Ohio, purchased a tract of coal land containing 124 acres, known as the Magoffin farm, in Pine township. Adjoining this tract on the east was the Richmond farm of 50 acres, and on the south and between the Magoffin and the Shenango & Allegheny Railroad was the W. G. White farm of 80 acres, the coal underlying both these farms being then under lease to the Mercer Mining and Manufacturing Company at a royalty of ten cents per ton, payable as the coal was mined. A controlling interest in the stock of the Shenango & A. R. Co. and of the Mercer M. & M. Co. was held by the same persons. On February 1, 1883, the Mercer M. & M. Co. assigned or sub-let to Jesse Hall both leaseholds with all rights and privileges connected with the coal under the said Richmond and White farms, the assignee binding himself to perform the covenants of the assignor, to

mine and remove at least certain quantities of coal each year, to pay to the landlord the royalty thereon, and to the assignor the further sum of five cents per ton of the coal as mined and removed.

The plaintiffs, in their case in chief, having put in evidence the original lease from G. W. White to the Mercer M. & M. Co., dated February 27, 1880, and the assignment or transfer thereof to Jesse Hall, dated February 1, 1883, with the resolution of the directors of the Mercer M. & M. Co. authorizing it, then offered in evidence the article of agreement dated February 3, 1883, between J. N. White and the other plaintiffs in the case, the heirs at law of G. W. White, deceased, and the Mercer M. & M. Co., signed by the Mercer M. & M. Co. by A. H. Steele, president, and by the White heirs, all under seal; to be followed by evidence showing that in executing this contract the Mercer M. & M. Co. acted as the agent of Jesse Hall.

Objected to by defendant, first, because the present suit is between the plaintiffs and Jesse Hall, and this contract is between the plaintiffs and the Mercer M. & M. Co., a corporation that could act only by and through its official seal and organization; and therefore it is res inter alios acta and incompetent and irrelevant: and, second, because a corporation cannot act as the agent of an individual in the purchase, acquisition or lease of any real estate, having only the capacity which is given by its organization; and therefore it is incompetent.

By the court: Objection overruled.[1]

By this contract, in consideration of $1 and the further sum of $125 per annum, the said heirs at law, who were the plaintiffs in this suit, demised to the Mercer M. & M. Co., for twenty years, 10 acres out of the White farm, described by metes and bounds, "for the purpose of opening, mining and removing the coal and depositing thereon waste and refuse materials and erecting thereon all necessary buildings," etc., with the refusal to the said company "at their option to purchase said land at any time within 90 days from the date of this agreement, at $150 per acre, cash. . . . . Also, the said company agrees, while operating on the White farm, to mine and take out annually as much coal as they do from all other lands adjoining, until the coal is exhausted;" and, for a certain consideration in coal to be delivered, the parties of the first part granted a

right of way through other portions of said tract whereon to construct a switch to connect with the Shenango & A. Railroad.

The plaintiffs then followed with evidence tending to show that the defendant, residing out of the state, had as his general agent and the manager of his coal business in Mercer county, one D. H. Williams, who in his behalf negotiated for the assignment of February 1, 1883, with J. T. Blair and A. H. Steele, officers of the Mercer M. & M. Co. Williams testified that when he read over the original lease of the White farm to the mining company, he observed that there was no provision in it for surface openings and privileges, which were absolutely necessary on account of the dip of the coal, and that when Mr. Blair's attention was called thereto, he said, " Yes, I discover that now; I did not understand that before, and we'll get you whatever privilege is necessary to make an opening; we'll get that for you; I will see that it is procured; and with that understanding I took the lease."

It was then shown that about April 10, 1883, the Mercer M. & M. Co., through Mr. Williams, arranged with the defendant that the latter should take possession of the 10 acre surface lease and proceed to open up his mines; and an agreement was made that the defendant was to grade the route of the switch connection, the mining company to furnish him the rails and ties, the cost thereof to be afterwards repaid by rebates on coal freights. It was also arranged, as was claimed, that the defendant should take the 10 acres under the option of purchase; and, on April 28, 1883, the mining company notified the White heirs " that the said company will purchase said land according to the conditions of said agreement." On March 21, 1883, a deed was executed by the White heirs to the Mercer M. & M. Co. for the 10 acres, which deed, however, was not then delivered. At a later date, the defendant made a contract for the grading of the switch, and on August 13, 1883, a paper signed by " Hubbard Mining and Manufacturing Company, per D. H. Williams," was served upon the White heirs which read: " You may give Mr. Muldoon the privilege to enter the 10 acre lot and do his grading. The deed will be taken up and the money paid over this week. The Mercer mining company will make us a transfer of title

and all will be satisfactory." On October 15, 1883, a notice signed by J. L. Cochran was served upon the plaintiffs, which read: "D. H. Williams, agent of Jesse Hall, authorizes me to give notice to said Heirs that Jesse Hall is ready and willing to perform the whole contract in behalf of the Mercer M. & M. Co. and said heirs, dated February 3, 1883, and if said heirs refuse to accept, said Jesse Hall will bond them and proceed with the work." Afterwards the work of grading the switch was completed, but the deed executed on March 21, 1883, was never delivered, because, as was alleged of an existing mortgage upon its property and franchises executed by the Mercer M. & M. Co.

To meet the plaintiff's case, the defendant introduced testimony to the effect that D. H. Williams had no authority to represent him in anything done with reference to the contract for the lease of the 10 acres, made on February 3, 1883, and that defendant never heard of said contract until about April 10, 1883, when, having tested the Magoffin farm with the drill, and found that he could open his mines upon his own lands, another railroad company made a proposition to build to him and take his coal, and then the Mercer M. & M. Co., to induce a connection with the Shenango & A. R. Co., proposed to turn over to him their contract of February 3, 1883, and to furnish the ties and iron to track the switch, if he would grade the route, the cost of the ties and rails to be afterwards adjusted, which proposition was accepted. The defendant then proposed to prove by Mr. Williams, on the stand, "that he went on in pursuance of the arrangement he made with Mr. Steele for the building of this road and the taking of this contract off the hands of the Mercer M. & M. Co., and he performed all his part, and that the other parties have utterly neglected to do anything."

Objected to, as incompetent and irrelevant.

By the court: Objection sustained.[2]

The court, MEHARD, J., after reviewing the testimony, charged the jury as follows:

The testimony of Mr. Williams and the testimony, perhaps, of Mr. Blair or Mr. Steele, or some of the other witnesses on behalf of the plaintiff, is to the effect that these negotiations

for the sub-letting of the eighty acres of coal land, and for the
acquiring of further privileges upon part of that land, to
enable them to put down a shaft and do other work and put
other constructions there for the mining of coal, were part
and parcel of the same transaction; that they were all one
and the same, and [that the company by its agents, who were
conducting the affair for them, agreed that they would get the
rights and privileges which Mr. Hall should desire upon that
part of the land.   If that be so, it is argumentative, and strongly
so, to the effect that what the company did thereafter, they did not
for themselves, but for Mr. Hall; and yet, as Mr. Hall was not
present at that time, if he gave no authority for them so to do, he
would not be bound by it, unless he ratified what was done with-
out authority at a subsequent time.   But if he did ratify subse-
quently what was done at that time without his express authority
by accepting its benefit, then he would be as much bound by it as
he would if he had authorized it before it was made.   Now in
the subsequent transactions which resulted in the making of
the agreement of February 3, 1883, who, does it appear, accord-
ing to your convictions, was the real beneficiary in the lease?
Whom was the lease being made to, and to whom was the
option of sale being made?   And by that I do not mean in the
intent of the White heirs, but as between the Mercer M. & M.
Co. and Mr. Hall.   Was the company then acting for itself to
procure rights and privileges for itself, or was the company by its
agents acting then to procure rights and privileges for Mr. Hall
under his direction or under his subsequent ratification.   If the
company were procuring privileges for themselves and for their
own right, it would be a very different matter than it would be if
they were acting for Mr. Hall and procuring privileges for him
under an agreement previously made that they would do so.] [3]
At the time of the original agreement or the sub-lease on Febru-
ary 1, 1883, Mr. Williams states that it was essential, as they con-
sidered, to the enjoyment or the use of the eighty acres, that
they should have the rights and privileges for making an open-
ing, etc., upon a part of that eighty acres of land.   If that be
true, that they so considered, and if that agreement was made
by the authority of Mr. Hall, given at the time or prior thereto
or subsequently ratified by him, and if Mr. Hall entered into
possession of the land and made improvements upon it under

Charge of Court below.

that agreement, he could hold the land against the Mercer M. & M. Co., and if he were the real party who was negotiating there and whom the company represented, he would be bound by their agreement; or, if he subsequently thus entered into possession of the land and promised to pay the purchase money which was not yet due, and made improvements upon it, and the land was purchased by the company for him, that would likewise bind Mr. Hall in this suit and he would be responsible. It is true Mr. Hall would not be liable in this suit if he was not in a position to claim the land and to hold the land which he entered into possession of. If there was no right on his part to hold this land, there would be no right on the part of the plaintiffs to recover from him the purchase money for it. But if the facts which I have stated as being sufficient to enable the plaintiffs to recover for this land, are shown by the evidence, Mr. Hall could hold the land and his responsibility for the purchase money would be fixed. [There is one fact to which you should direct attention, and it has been presented to you by the counsel upon both sides, and it is this: Whether the company at the time of the closing of the negotiation on February 1, 1883, undertook, without pay from Mr. Hall to the Whites or anybody else, to acquire the rights and privileges which Mr. Hall desired. If that was the agreement between the parties, Mr. Hall would not be liable in this suit; but if the agreement then was that the company or its agents would procure an agreement from the Whites for Mr. Hall, securing to him certain privileges, but that he would fulfil the conditions of the agreement, then that would be such an agreement as, with the other facts presented, would entitle the plaintiffs to recover in this case.] [4]  Now, how was that? Was it the agreement between the parties that Mr. Hall should have those privileges without paying anything for them? Was that part of the matters for which he already paid in the agreement of February 1, 1883, or was the company's obligation merely to act for him in getting those privileges, but that he would pay whatever they would cost to the Whites? The evidence does not disclose, so far as I recall it, that anything on that subject was said on the day of the transfer, to wit, on February 1, 1883, and what the agreement of the parties was, you must discover from the other evidence in the case, and an interpreta-

tion of that agreement, or, the agreement in that particular can be had by the subsequent conduct of the parties. Did they in their subsequent treatment of this article of February 3, 1883, treat it as though the Mercer M. & M. Co. were to pay what was to be paid for the rights and privileges to be acquired in that land, or that Mr. Hall himself was to pay therefor? I believe that with the answers to the defendant's points in the case the instructions given to you will cover this case, and I will not undertake a discussion of the evidence.

The defendant has submitted the following requests for instruction:

1. The court is requested to instruct the jury that all contracts in regard to the sale of real estate, to be binding on the parties, must be in writing and signed by the parties to be charged.

Answer: This is a correct statement of the law, but it is not necessary that both the vendor and the vendee should sign the contract. It is sufficient if the vendor sign the contract. The vendee can be bound by a verbal promise to accept the land and pay for it. With this explanation this request is affirmed.

4. That all the writings in this case, to wit, the article of February 3, 1883, the notice of April 28, 1883, and the deed offered in evidence, are between the plaintiffs and the Mercer M. &. M. Co., and create a subsisting, binding contract between said parties for the subject-matter.

Answer: It is true that those writings are in form between the parties named in this request, but if the Mercer M. & M. Co. were acting there for Mr. Hall, and were in fact his representatives by authority previously given or subsequently sanctioned, then, while the form of the papers is that of agreements between the company and the Whites, the plaintiffs, the real party would be Jesse Hall.

At the time those papers were made, if the plaintiffs did not understand that the Mercer M. & M. Co. were representing Mr. Hall, then the plaintiffs had the right to hold the Mercer M. & M. Co. to the agreements which they made in those papers. But if the plaintiffs are right in alleging that Mr. Hall was the real party, and they have elected to seek their remedy as against him, then whether the company is liable or not is an immaterial fact. If Mr. Hall was the real party, and

Charge of Court below.

the other facts stated to be essential to the plaintiffs' recovery are found in the plaintiffs' favor, your verdict would be in favor of the plaintiffs, whether the company could still be sued or not. Of course the plaintiffs could not sue and recover twice. If they recover from Mr. Hall they cannot recover from the company. That would be a matter between the company and Mr. Hall.[5]

5. That there is no written contract between the plaintiffs and the defendant in this suit in regard to the purchase of the said land and the payment of the same.

Answer: There is no written contract which appears in the name of Mr. Hall in this case, but the allegation of the plaintiffs is that the contract which is in writing and signed by them is also the contract of Mr. Hall. Whether that be true is a question of fact for you to determine.[6]

6. That there is no written contract or agreement between the plaintiffs and the defendant by which the defendant bound himself to pay the plaintiffs the debt of the Mercer M. & M. Co. under the contract of February 3, 1883.

Answer: This request is affirmed. The promise which the plaintiffs rely upon is in effect a parol promise; because, while they ask you to find that these notices are a promise upon the part of Mr. Hall to pay this money, yet, inasmuch as they are not signed by Mr. Hall himself, they are not what is termed in law a writing by Mr. Hall, they are still parol. But a written promise is not essential; a parol promise is sufficient, if you find the other facts which we have stated will warrant a recovery by the plaintiffs.[7]

7. That the parol evidence offered in this case to contradict and vary the terms and conditions of the written papers offered by the plaintiffs, is not sufficient nor of that character that would justify the court in submitting the same to the jury.

Answer: This request is refused.[8]

8. That the tender of a deed to defendant would be a condition precedent to the right of plaintiffs to recover in this case.

Answer: We do not conceive this to be essential at this stage of the proceedings. Justice can be secured to the defendant, if a deed is necessary, or whatever deed may be necessary, between the time of rendering the verdict and the time of giving judgment, if your verdict should be in favor of the plaintiffs.[9]

The jury returned a verdict in favor of the plaintiffs for $1,934.50. A rule for a new trial having been granted, on March 18, 1888, the court filed an opinion, by which, citing and considering Grove v. Hodges, 55 Pa. 504; Hefferman v. Addams, 7 W. 116; Smith v. Warden, 19 Pa. 424, and Warden v. Eichbaum, 3 Gr. 42, the rule was discharged. Judgment having been entered upon the verdict, the defendant took this writ, assigning as error:

1. The admission of plaintiffs' offer.[1]
2. The refusal of defendant's offer.[2]
3, 4. The parts of the charge embraced in [ ][3][4]
5-9. The refusal of defendant's points.[5 to 9]

*Mr. Samuel Griffith* (with him *Mr. Samuel B. Griffith*), for the plaintiff in error:

1. Had the contract of February 3, 1883, been in the name of the defendant, then the question of the authority of the agent or of the defendant's subsequent adoption or ratification would have become an important and controlling element. That contract was certainly res inter alios acta, and we submit that the mining company could not act for any person as agent in purchasing or leasing real estate. Whatever the officers of the company did, in the corporate name and under the corporate seal, was done for the corporation and vested title in it which could only be transferred by corporate action duly had. Moreover, ratification can only be predicated of something done before, in the name of the person ratifying the transaction. It cannot be predicated of an act done for another and in another person's name, a stranger to the person ratifying. A stranger to a transaction for real estate cannot by parol adopt or ratify such transaction, so as to have rights or incur liability under the same.

2. If not a party in fact to that contract, nor yet bound by any subsequent written agreement to pay the plaintiffs, how is he liable? Can a written contract between A. and B. for land, become a contract between A. and C. for that land, or can C. become a party thereto so as to be liable to A. for the consideration, except by a written contract with B. to pay his debt to A? We concede he cannot hold the land from A. and that A. can dispossess him by ejectment, but that is not the ques-

tion. Even if C. were to take possession under B.'s contract, that would not make him personally liable to A. C. being a stranger to the contract between A. and B., not a party thereto, and that contract being for land, he could obtain no interest therein except by writing signed. And the consideration being the debt of another, B., C. could not be liable for it to A., except by writing duly signed.

3. Our eighth point, that the tender of a deed would be a condition precedent to the right of plaintiffs to recover, should have been affirmed. Had this been an action of covenant by the plaintiffs, would they not have been compelled to tender a deed before suit brought? And that from the very nature of the transaction, not from the form of the action, but because they would have no right of action until performance or tender of performance on their part. Why should any different principle apply when the action is assumpsit?

*Mr. B. Mayoffin* (with him *Mr. J. G. White*), for the defendants in error:

1. That the Mercer M. & M. Co. acted as the agent of the defendant in the contract of February 3, 1883, is not open for discussion; the jury upon sufficient evidence properly submitted have so found.

2. It was not necessary that the contract should be signed by Jesse Hall to bind him for the purchase money. All that was required on his part was to accept its terms and conditions and take possession of the land. "Neither the British statute nor ours requires that the written agreement or memorandum of sale should be signed by both parties. . . . . It is, then, only the lessor or grantor who is required to sign the agreement. His contract must be in writing and signed by him, but the statute requires no written evidence of the engagement of a lessee or grantee:" Tripp v. Bishop, 56 Pa. 428; Swisshelm v. Swissvale Laundry Co., 95 Pa. 367. Nor was it necessary that the defendant's election to purchase the land, under the option given in the contract, should be in writing: Smith's App., 69 Pa. 480.

OPINION, MR. JUSTICE PAXSON:

This was an action of assumpsit for the purchase money of

ten acres of land at $150 per acre. The declaration is not printed as required by the rules of court, but we understand that the articles of agreement for the sale are set forth therein. As no point arises upon the declaration we can excuse its omission.

The articles of agreement upon their face are between the plaintiffs as vendors and the Mercer Mining and Manufacturing Company as vendee. If this were all, there would be nothing to connect the defendant below with the contract. The jury have found, however, and upon abundant evidence, that the Mercer Mining and Manufacturing Company were but the agents of the defendant; that they negotiated the transaction for him, and that in pursuance thereof he entered into the possession of the land and made certain improvements thereon. Under such circumstances it is horn-book law that the vendors had the right to sue the principal for whose benefit the contract was made. The mere fact that they might have pursued the agent, does not deprive them of the right to proceed against the principal when discovered.

It was contended, however, that the Mercer Mining and Manufacturing Company were not acting as the agent of the defendant in entering into this contract with the vendors; that having leased the coal on the White farm, and having sublet it to defendant at an advance of five cents per ton royalty, it had voluntarily agreed by parol to procure for defendant certain openings or privileges which were essential to the proper mining of the coal, and that the purchase from the White heirs was in pursuance of this understanding. In other words, that the Mercer Mining and Manufacturing Company were to pay for it, and the benefit thereof to accrue to the defendant as their lessee. This raised a question of fact for the jury, and unfortunately for the defendant they have found it against him. It was fairly submitted, and a careful examination of the testimony satisfies us that the verdict is fully sustained thereby. It would serve no useful purpose for us to recapitulate the testimony and discuss it at length. Our concern is with the manner of its submission. A careful examination of this branch of the case fails to disclose any substantial error either in the admission or rejection of evidence, in the charge of the court, or in the answers to points. The main question of

fact went to the jury under fair and adequate instructions from the learned judge below. It was eminently a case for a jury, and we are unable to see that either the court or the jury committed any error.

Judgment affirmed.

