Ottman et al., Appellant, *v.* Nixon-Nirdlinger et al.

Argued April 22, 1930.  Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

236

*Owen J. Roberts,* with him *Ulric J. Mengert* and *Robert T. McCracken,* for appellants.—In Pennsylvania the assignee of a leasehold does not have to sign or seal the instrument of assignment: Tripp v. Bishop, 56 Pa. 424; Morgan v. Yard, 12 W. N. C. 449; Hall v. White, 123 Pa. 95; Brodhead v. Reinhold, 200 Pa. 618.

Where a seal is surplusage it is properly disregarded and the law of undisclosed principal applies: Swisshelm v. Laundry Co., 95 Pa. 367; Gasner v. Pierce, 286 Pa. 529; Dick v. McWilliams, 291 Pa. 165.

The facts are amply sufficient to warrant the conclusion of privity of estate between appellants and appellees: Negley v. Morgan, 46 Pa. 281; Morgan v. Yard, 12 W. N. C. 449; Shafer v. Cascio, 288 Pa. 56; Davis v. Land Co., 296 Pa. 449.

Appellees were legally in possession of the leasehold as assignees and not as sublessees: Lloyd v. Cozens, 2 Ashmead 131.

*Arthur S. Arnold,* with him *Morris Wolf* and *Sundheim, Folz & Sundheim,* for appellees.—One holding title to real estate for others is a trustee and not an agent: Hartley v. Phillips, 198 Pa. 9; Taylor v. Davis, 110 U. S. 330.

There is no privity of estate between an original landlord and a sublessee where the intervening lessee reserves a right of entry, additional rents, and new conditions: McNeil v. Kendall, 128 Mass. 245; Thompson v. Potts, 135 Ga. 451; David v. Vidal, 151 S. W. 290; Walters v. N. C. & W., 5 DeG. M. & G. 629; Wheeler v. Hill, 16 Maine 329; Drake v. Lacoe, 157 Pa. 17; McClaren v. Oil & Gas Co., 14 Pa. Superior Ct. 167.

There is no privity of estate between the original lessor and a sublessee and no personal action lies by the lessor against the sublessee to recover rent: James v. Kurtz, 23 Pa. Superior Ct. 304.

Where an agent rents property in his own name, his principal is not liable: Taylor v. Davis, 110 U. S. 330; Greene Co. v. Surety Co., 292 Pa. 304; Shermet v. Embick, 90 Pa. Superior Ct. 269; Yentis v. Mills, 299 Pa. 25.

Practice has established the use of a straw man to limit liability: Dietz v. Girard Craftsman's Club, 9 Pa. D. & C. 805.

When an assignee of a lease assigns in turn to another, he lays down its burden, even though the assignment be to a beggar: Washington Gas Co. v. Johnson, 123 Pa. 576; Goss v. Fire Brick Co., 4 Pa. Superior Ct. 167; Borland's App., 66 Pa. 470.

OPINION BY MR. JUSTICE SADLER, September 29, 1930:

The trustees for the parties beneficially interested in a certain property, demised the same, on November 28, 1921, by a writing under seal, to the Realty Associates, Inc., for the period of 99 years. The lessee agreed to pay the taxes assessed, and a fixed rental for the first five years, at the expiration of which time, and at like

succeeding intervals, the amount should be determined by a revaluation of the premises. The right to assign or sublet was given, and the contract bound the lessee, its successors and assigns. On January 22, 1922, it did assign to an admittedly straw man, Samuel Gross, the entire term, reserving, however, for 21 years the payment of an annual sum of $7,500, in addition to the taxes and rent payable to the lessor, which the assignee covenanted to liquidate, and to this obligation also bound his representatives and assigns. To secure faithful performance, the original lease was deposited with the Greenfield Co., who were given entire charge of the property, with right to collect the rentals, paying, first, the lessors, second, the compensation for 21 years reserved by the Realty Associates, Inc., and the balance to the assignee or his assigns.

The transfer by the first lessee named was in terms an assignment, and not a sublease, and the writing is so designated in the statement of claim under consideration, and likewise defined in the affidavits of defense raising questions of law in the present case. Rentals fixed were paid the lessor until a revaluation was had, in which proceeding, it is averred, Greenfield & Co., acting as agent for the defendants, undisclosed principals, took part, resulting in an increased annual charge. The sum agreed on was paid until 1928, when it was discovered that those having the beneficial enjoyment of the property were in default in satisfaction of taxes, whereupon demand was made of their representative for payment of the sums due. This obligation was not complied with, though the advancement of the rent accruing continued until May 13th of that year. Thereafter, this action of assumpsit was brought, against those having the use of the property, to recover overdue installments of rent, and for the amount of unpaid taxes as well. Affidavits of defense were filed raising questions of law, liability being denied on the ground that those named as defendants were undisclosed principals, as to whom

there was no privity of estate with plaintiff, and contending that the assignee named in the written agreement could alone be proceeded against. Approving this legal position, the court below entered judgment for defendants.

It is admitted that if the writing in question was a simple contract, though under seal, an action would lie against the undisclosed principals of the assignee (Lancaster v. Knickerbocker Ice Co., 153 Pa. 427), but also urged that, since the demise passed an interest in land, it can be enforced only against those named as parties thereto. The agreement with the Associates, Inc., was under seal, as was the assignment to the straw man, Gross, but plaintiffs insist that those having the beneficial enjoyment or use are liable for the performance of the sealed covenants, binding as they did their successors and assigns. If any liability exists it must arise from the proof of a privity of estate rather than of contract.

The statute of frauds has no application to the present situation, for it was only necessary that the owners of the reversion, those to be bound, should comply with its requirements to make the obligation an enforceable one: Carnegie Natural Gas Co. v. Phila. Co., 158 Pa. 317; Tripp v. Bishop, 56 Pa. 424; Hall v. White, 123 Pa. 95; Brodhead v. Reinhold, 200 Pa. 618. Though a seal retains in part its common law force in limiting a right of action (Greene Co. v. Southern Surety Co., 292 Pa. 304), yet this is not true where its use is mere surplusage (Dick v. McWilliams, 291 Pa. 165; Swisshelm v. Swissvale Laundry Co., 95 Pa. 367), or, where added, it appears from the writing itself the one signing acts for another: Yentis v. Mills, 299 Pa. 25.

We are not unmindful of the interpretations of the early-recognized rule that, where a demise under seal is in question, an action against an undisclosed principal does not lie, since the relation between the owner of the land and the one who occupies is of a purely legal char-

acter. Many decisions upholding this proposition, some of which have been cited by appellee, are found in an annotation to 32 A. L. R. 162, of which the leading one, particularly relied on, is Borcherling v. Katz, 37 N. J. Equity 150. But an examination of the authorities referred to will show the controlling question was whether a privity of estate existed. If so, the unnamed principal, in actual possession, or having the beneficial enjoyment, may be held, and his interest can be established by evidence entirely apart from the document of title: Gasner v. Pierce, 286 Pa. 529; Hall v. White, supra. If there be a privity of estate with the assignee, then an action lies against him when the breach occurs: Morgan v. Yard, 12 W. N. C. 449; Washington Gas Co. v. Johnson, 123 Pa. 576. In the English decision, upon which Borcherling v. Katz (page 155), above mentioned, rests, it was said, inter alia, "If the lessee assign to another, the landlord has against his assignee, so long as he remains in possession, the same rights as he had against the original tenant." We need not decide in the present case whether the transactions between the parties were assignments, but the papers so designated them, and the pleadings so aver. The original lessee could not relieve himself by making an assignment of the term (Ralph v. Deiley, 293 Pa. 90), unless the surrender be accepted by the lessor; nor could the assignee: Harman-Wastcoat-Dahl Co. v. Star Brewing Co., 122 N. E. 753, 232 Mass. 566.

If the transaction had been in the form of a sublease, then the lessor could not maintain its action (Drake v. Lacoe, 157 Pa. 17; McClaren v. Citizens' Oil & Gas Co., 14 Pa. Superior Ct. 167; James v. Kurtz, 23 Pa. Superior Ct. 304), but if it was an assignment, and if the undisclosed transferees as principals received the beneficial enjoyment of the property, as averred, then they are, in terms, responsible. So, if the assignment had been to another to hold in trust for parties named, or otherwise, no recovery could be had against the cestui que trust in

case of default: Hartley v. Phillips, 198 Pa. 9. But this was not the case of a trust, but an allegation of the assumption of the covenants by the undisclosed principals through their agent, who took charge of the property. Nor do we see merit in the suggestion that the relation of the parties was altered because the Associates, Inc., provided in its assignment for additional compensation to it, running over 21 years, retaining the power to reënter if default occurred: Lloyd v. Cozens, 2 Ashmead 131. The transaction is still to be treated as an assignment, with the incidents flowing therefrom, though such a reservation appears as shown by the cases cited by appellees: Gillette Bros. v. Aristocrat Restaurant, 239 N. Y. 87; Sexton v. Chicago Storage Co., 129 Ill. 318; Stewart v. Long Island R. R. Co., 102 N. Y. 601.

We withhold our views of the controlling principles of law, since their application will depend on the facts found. It must be kept in mind that judgment was here entered summarily for want of a sufficient statement. If the agency on behalf of the undisclosed principals averred in the statement is proved, then an assumption of liability on their part may result. A mere statement of a conclusion that such relation exists is not enough: Price, Inc., v. Robbins, 298 Pa. 568; Com. v. Snyder, 1 Pa. Superior Ct. 286. It does allege, however, that the lease was taken by the Associates, Inc., who assigned to a straw man, Gross, under agreement that the written contract be placed with Greenfield & Co., who should have entire control. It did so act, for and in conjunction with the other defendants, using the rents collected to pay the lessor directly, taking part in the revaluation of the property, adjusting the rental for the second five-year period, and through it the undisclosed principals had the beneficial enjoyment of the property, though not personally in possession, if the averments of the statement be taken as true.

The question is not therefore whether the statement of claim is so clear in both form and specification as to entitle plaintiffs to proceed to trial without amending it, but whether, upon the facts averred, it shows with certainty that the law will not permit a recovery by plaintiffs. If a doubt exists this should be resolved in favor of refusing to enter it: Davis v. Investment Land Co., 296 Pa. 449. See also Coyle v. Dreyfous, 298 Pa. 518. It may be that the proofs tendered on the trial will not support the averments made in the statement of claim, but if they are taken as true, as must be done in the present proceeding, a question was raised which could not be disposed of on an affidavit of defense raising the legal question suggested.

The judgment is reversed with a procedendo.

DISSENTING OPINION BY MR. CHIEF JUSTICE MOSCHZISKER:

Whether Gross be considered an assignee or a subtenant, I cannot agree that the court below erred in entering judgment for defendants on the record in this case. In the first place, the statement of claim contains no averment or recital of facts to show that defendants either had the actual use of the property in controversy or were entitled to its beneficial enjoyment. Plaintiffs satisfy themselves with the mere statement of their conclusion that "Gross, in accepting the assignment of the said lease and in executing the said articles of agreement dated January 26, 1922, acted as agent for defendants......as undisclosed principals." Jules E. Mastbaum, the decedent of the first three defendants, like the last named defendant, Greenfield & Co., was a real estate broker and agent; for all that appears in the present statement of claim, their connection with this property may have been merely as agents of someone else entitled to its beneficial enjoyment. While I find no averment in the statement of claim which indicates what Mastbaum's real relation to this property was, and the

averment as to Greenfield & Co. would be entirely consistent with the performance of its duties as a real estate agent, yet my chief difficulty with the majority opinion is that, treating, as it does, Gross as a mere straw man, I cannot agree that his undisclosed principals may be held equally liable with him. The transactions here involved are not simple contracts, but writings, properly under seal, creating relationships which have to do with real property, a field in which straw men have long been used for the purpose of avoiding personal responsibility under the strict rules of law relating to ownership of that class of property.

In Coyle v. Dreyfous, 298 Pa. 518, 521, another case where the use of a straw man was involved, plaintiff claimed that Jenkins, the man in question, was the agent of defendant, and the latter claimed "that Jenkins, in place of acting as an agent, for whose deeds he, the defendant, would be personally liable, acted as a title-holding trustee for the very purpose of......relieving [defendant] of general personal liability"; and we held this, if established, to be a sufficient defense.

Read in the light of the Coyle Case and bearing in mind the trust relationship occupied by straw men, as there brought out, it seems to me that Hartley v. Phillips, 198 Pa. 9, relied on by appellees and the court below, rather than the earlier case of Morgan v. Yard, 12 W. N. C. 449, cited by appellants, is in line with the present one.

The effort of the law should always be to keep pace with the customs of the people, and this is particularly so in the realm of trade. Of recent years, the attempt has been to make the buying, selling and ownership of real estate as easy and uncomplicated as that of other classes of property; the right use of straw men facilitates this commendable end, and has been sanctioned by us. Owners who create long-term leases, as did the present plaintiffs, can readily protect themselves against the use, by their lessees and the latter's assignees, of irre-

sponsible straw men (though plaintiffs make no aver-
ment that Gross is such), in subsequent dealings with
the demised property, by stipulating that no assignment
or sublease shall be entered into without the written
consent of the original lessor, a provision ordinarily
found in real estate leases but significantly absent from
the present instrument, which simply provides that the
lessee may either assign the lease or sublet the premises,
continuing personally liable to lessors, and that all sub-
tenants or assignees shall, at the option of the lessors,
likewise be liable to them. The general rule is that,
where "a lessee takes a lease for an unnamed principal,
but in his own name, [the law] will not render the un-
named principal liable for rent": 36 C. J. 370; see also
cases from various jurisdictions, supporting this prin-
ciple, cited in a note to 32 A. L. R. 164. Had the orig-
inal lease in this case been made to Gross and if it were
subsequently proved he was acting for an unnamed prin-
cipal, the latter would not be liable to make payments
under the covenants of the lease. It seems to me the
same principle should apply here, if Gross be consid-
ered an assignee of the original lessee.

On the record before us, I think the court below prop-
erly held that, even if Gross be viewed as a straw man
assignee, acting for defendants as undisclosed principals
of some sort, there is nothing in the law which fixes these
defendants with personal financial responsibility to
plaintiffs; therefore I dissent from the contrary opin-
ion expressed by the majority of this court, which in
effect will greatly impede, if not abolish, the use, in real
estate transactions, of straw men, a most serviceable in-
stitution, long recognized in our law.

Mr. Justice KEPHART joins in this dissent.