## Rader et ux. v. Bernstein et al.

*J. Jerome Katz*, for plaintiffs; *Harry Shapiro*, for defendants.

TAULANE, J., March 18, 1931.—Plaintiffs entered into a written contract with Robert R. Breen and wife to exchange certain of their real estate in Philadelphia for certain real estate of Breen and his wife in Wildwood, New Jersey.

The statement of claim alleges that though the legal title to the land in New Jersey is in the name of Breen and his wife, the actual and real owners are the defendants, Louis Bernstein and Jacob J. Creskoff; that Breen and his wife in holding title to said land in New Jersey and in entering into the agreement of exchange with the plaintiffs were mere straw people and acting as agents in behalf of the defendants; that there was a default on the part of the defendants and Breen and his wife in making the exchange; that the suit is to recover the amount of liquidated damages stipulated in the contract; and that the suit is instituted against Bernstein and Creskoff because they are the undisclosed principals of Breen and his wife. The agreement between the plaintiffs and Breen and his wife is under seal.

Can suit be maintained on a sealed instrument against an undisclosed principal?

The prevailing view is that no one can sue or be sued on a sealed instrument except the parties thereto: 32 A. L. R. 162; Crowley v. Lewis, 239 N. Y. 264; Shermet v. Embick, 90 Pa. Superior Ct. 269.

There has been some departure from this technical rule in our Pennsylvania cases. Thus in Ottman v. Nixon-Nirdlinger, 301 Pa. 234, 241, it is said:

"It is admitted that if the writing in question was a simple contract, though under seal, an action would lie against the undisclosed principals of the assignee (Lancaster v. Knickerbocker Ice Co., 153 Pa. 427), but also urged that, since the demise passed an interest in land, it can be enforced only against those named as parties thereto. . . . Though a seal retains in part its common law force in limiting a right of action (Greene Co. v. Southern Surety Co., 292 Pa. 304), yet this is not true where its use is mere surplusage (Dick v. McWilliams, 291 Pa. 165; Swisshelm v. Swissvale Laundry Co., 95 Pa. 367), or, where added, it appears from the writing itself the one signing acts for another (Yentis v. Mills, 299 Pa. 25)."

In Greene Co. v. Southern Surety Co., 292 Pa. 304, 316, the court said:

"There is one other reason why this plaintiff cannot maintain a suit on the bond. This is an action on a sealed instrument, and in Strohecker v. Grant, 16 S. & R. 237, 241, we held that, whatever the rule might be in assumpsit, there could be no recovery in covenant by one not a party to the instrument. This rule was followed in De Bolle v. Penna. Ins. Co., 4 Wh. 68. See also Mississippi Cent. R. R. Co. v. Southern Assoc., 8 Phila. 107, 108. It is true that in Brill v. Brill, supra, the court below said that the rule fell when the distinction between pleadings in covenant and assumpsit was abolished. As we pointed out above, that case was decided purely upon the ground of public policy. Furthermore, we cannot agree that the proposition that one not a party to a sealed instrument cannot sue upon it rests entirely upon rules of pleading. Prof. Williston says (sec. 401) that 'none of the earlier cases which allowed a right of action to one who was not a party to the contract related to contracts under seal, and where statutes have not taken away the importance of the distinction between sealed and parol contracts the rule that one who is not a party to a contract under seal cannot sue upon it is still applied to contracts (either) to benefit or pay a debt to a third person.' In this State, speaking generally, a seal retains its common law force, and we must conclude that the rule remains unchanged."

In Shermet *v.* Embick, 90 Pa. Superior Ct. 269, 271, Keller, J., said:

" 'The general rule is, that the action should be brought in the name of the party whose legal right has been affected:' 1 Chitty on Pleadings 1. 'It is an inflexible rule that if a deed be *inter partes*, that is, on the face of it expressly describe and denote who are the parties to it (as "between A. of the first part, and B. of the second part"), C., if not expressly named as a party, cannot sue thereon:' Ibid., p. 3. 'In [the case of a contract under seal] the implied right of action of the principal merges in the higher security taken, by his authority, by the agent, and the remedy is in the name of the latter only:' Ibid., p. 9. 'The party having the legal cause of action can alone be plaintiff:' 2 Troubat & Haly's Practice (Brightly's Ed.) sec. 1655. These eminent authorities are supported by a wealth of decisions."

The title to the land in New Jersey, which is in question here, is in the name of Breen and wife, one of the parties to the contract of exchange, and in view of this and in view of the authorities we have quoted, we think we are bound to hold that the plaintiffs cannot maintain suit against the defendants on the sealed instrument to which they are not parties.

Until the distinctions between sealed and unsealed contracts are abolished by statute, the time has probably come when the courts should decide that a seal has no legal significance—that it is mere surplusage—except on instruments required to be sealed, such as a deed, mortgage or bond. It is for the Supreme Court, and not for us, to say whether this step should be taken.

Something can be said, however, in favor of continuing the law as it is. In Crowley *v.* Lewis, 239 N. Y. 264 (1925), the court held that an undisclosed principal could not be sued on an agreement under seal for the exchange of real estate, though strongly urged to declare that the addition of a seal was mere surplusage, and that the agreement should be interpreted as an ordinary agreement not under seal. Chief Justice Cardozo, who was a party to the decision, has observed:

"The rule was settled at common law that an undisclosed principal might not be held to liability upon a contract which had been executed under seal. Much of the law as to seals has small relation in society as now organized to present-day realities. The question came up whether we would adhere to the rule that I have mentioned, or hold it to have faded away with the fading significance of seals. The decision was that the old rule would be enforced. Precedents of recent date made departure difficult if *stare decisis* was not to be abandoned altogether, but there were other and deeper grounds of policy. Contracts had been made and transactions closed on the faith of the law as it had been theretofore declared. Men had taken title in the names of 'dummies,' and through them executed deeds and mortgages with the understanding, shared by the covenantees, that liability on the covenant would be confined to the apparent principal. They had done this honestly and without concealment. Something might be said, too, in favor of the social utility of a device by which the liability of the apparent principal could be substituted without elaborate forms for the liability of another back of him who was to reap the profits of the transaction. The law has like devices for limiting liability in other situations, as, *e. g.*, in joint stock associations, corporations, and limited partnerships. In any event, retrospective change would be unjust. The evil, if it was one, was to be eradicated by statute." (Cardozo on The Paradoxes of Legal Science, 70). The dissenting judges in Ottman *v.* Nixon-Nirdlinger, 301 Pa. 234, expressed similar views.

There is another point fatal to the plaintiffs' recovery. The defendants have neither signed nor authorized any one to sign their names to the agree-

ment of exchange in question. The defendants' names do not appear in the contract of exchange. It is true, as decided in Siegel *v.* Robinson, 56 Pa. 19, that our statute of frauds applies only to contracts for the sale of land in Pennsylvania, and not to contracts for the sale of land in other states.

In the Siegel case, which was an action to enforce a contract for the sale of land in Ohio, there was no proof of the law of Ohio. It is suggested here, and the suggestion is sound, that in the absence of evidence it will be presumed that the law of New Jersey is the same as the law of Pennsylvania even though it be statutory law. (Bennett et al. *v.* Cadwell's Exec'r, 70 Pa. 253.) If this be so, the statute of frauds of New Jersey, like our statute of frauds, would make such a contract void and unenforceable as against the defendants.

There is no merit in the contention that the defendants were present at the time of the execution of the agreement and directed Breen, their alleged agent, to execute the contract in their behalf. No facts support this contention except the mere fact that Creskoff, one of the defendants, appears as a witness on the agreement without any indication whose signature he witnessed.

It is the generally accepted rule that if a person, who is a party to a written agreement, is present at the time of its execution and directs a third person to sign his name to the agreement, it is equivalent to the person signing his name himself, and this is a good execution even under the statute of frauds (Fitzpatrick *v.* Engard et al., 175 Pa. 393), but to be a sufficient execution, the signature put on the document must be the signature of the person to be charged or that of the person deputed to sign who signs as agent of the person to be charged. No such thing appears in this case. The agreement is with the Breens as individuals, and they signed their own names as individuals and not as agents. The defendants are not mentioned or referred to in the agreement at all.

And now, to wit, March 18, 1931, the questions of law raised in the affidavit of defense are sustained and judgment is now entered in favor of the defendants and against the plaintiffs. Exception to plaintiffs.