Ottman et al., Trustees, *v.* Albert Company
et al., Appellants.

Argued January 12, 1937. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Stanley Folz,* of *Sundheim, Folz & Sundheim,* with him *Morris Wolf* and *Allen J. Levin,* for appellants.

*Robert T. McCracken,* with him *Ulric J. Mengert,* for appellees.

OPINION BY MR. JUSTICE MAXEY, June 25, 1937:

This appeal involves the same written instruments and cause of action as were before us in *Ottman et al. v. Nixon-Nirdlinger et al.,* 301 Pa. 234, 151 A. 879. The decision in that case was upon the pleadings, and it was held that plaintiffs' statement of claim made out a prima facie case entitling them to recover. Summary judg-

ment for defendants upon a statutory demurrer was reversed and the case was remanded for trial. Upon the trial it appeared that the estate of Jules E. Mastbaum, deceased, had been improperly joined as a party defendant, instead of the corporation in which he had been active during his lifetime, Mastbaum Brothers and Fleisher. Accordingly judgment was entered for defendants, without prejudice, and plaintiffs instituted the present suit. Meanwhile Mastbaum Brothers and Fleisher changed its name to Henry Corporation, one of defendants, and Albert M. Greenfield & Company, the other defendant, became the Albert Company. The third defendant in the prior suit, Nixon-Nirdlinger, died before the suit was begun and plaintiffs made a cash settlement with his executors, covenanting not to sue.

The facts developed at the trial were substantially as disclosed in plaintiffs' statement of claim in the prior suit. In addition, oral and documentary proof was presented. Plaintiffs are substituted trustees. Their predecessor trustee on November 28, 1921, executed a written lease of certain real estate, located at Girard Avenue and Broad Street, Philadelphia, to a corporation, Realty Associates, Inc., for a term of 99 years. The annual rental was fixed at $30,000 for the first five years, thereafter to be redetermined by an appraisement of the premises. The lease further required that the lessee pay, as additional rent, all taxes and assessments on the property. By express condition the lease was assignable, on the condition that any assignee or sublessee of the lessee should be subject to all the terms of the lease and to a suit for default theron brought by the lessor.

On January 26, 1922, two months after the lease was executed, the lessee conveyed all its right, title and interest in the lease, by an agreement in writing therein designated an assignment, to Samuel Gross, a straw man who in this connection acted for defendants and for Nixon-Nirdlinger as his principals. The consideration stated in the assignment was $157,500, to be paid to

the assignor, the lessee, in 21 annual installments of $7,500 each. Gross, the assignee, agreed in addition to perform all the covenants of the original lease in the lessee's stead, and that on default the lessee might cancel the assignment and retake possession of the premises. It was stipulated that, in order to assure compliance with the terms of the assignment, the original lease should remain on deposit with Albert M. Greenfield and Company (now the Albert Company, one of defendants), until the consideration had all been paid to the lessee. Greenfield & Company was to be the sole rental agent and to collect the rents and make distribution thereof to the lessor, lessee and assignee.

Greenfield & Company, the depositary of the lease, went into possession, collected the rents, paid certain taxes and repairs, and made disbursements on account of rent to the lessor and lessee. From the outset, however, the transaction was a losing venture for Gross's principals. Rentals received from subtenants were never sufficient even to make the payments required by the lease and assignment. Appellants and Nixon-Nirdlinger, instead of receiving a distribution of profits, were compelled to make up the deficit. Taxes fell in arrears and the quarterly payments of rental due the lessor ceased to be promptly paid. The annual rent was appreciably increased on a reappraisement of the property in 1926, after the expiration of the first five-year period, as provided in the lease. Finally plaintiffs, after giving notice, evicted defendants on June 28, 1928, in an amicable action of ejectment. Eventually this suit was brought, the default averred being nonpayment of a portion of the quarterly installment due January 1, 1928, the installment due April 1, 1928, and a much larger sum for unpaid taxes due for certain years, which plaintiffs paid on May 17, 1928.

The trial judge directed a verdict for plaintiffs and judgment in the amount of $75,397.76 was entered thereon, composed of the two items, $64,300.01 for taxes and

$11,097.75 for rent. The court in banc overruled defendants' motions for judgment n. o. v. and for a new trial, and they have appealed.

Appellants' main contentions are that the agreement, or conveyance of the leasehold estate, dated January 26, 1922, was a sublease, not an assignment, and that this prevents Gross, the straw man, and hence appellants as well, from being liable directly to the lessors for rent; and, furthermore, that appellants, as unnamed principals of the straw man, cannot be held liable for his debt on principles of privity of estate.

These questions were previously decided adversely to appellants when the same lease and assignment were before us in the prior suit: *Ottman et al. v. Nixon-Nirdlinger et al.,* supra. The importance of the issues involved, however, makes appropriate some further consideration of the principles involved. In dealing with the first question stated, whether the lease was assigned or there was a mere sub-letting, Mr. Justice SADLER, with the instrument before him, speaking for this court, said in the case cited, at page 242: "If the transaction had been in the form of a sublease, then the lessor could not maintain its action *(Drake v. Lacoe,* 157 Pa. 17, [27 A. 538]; *McClaren v. Citizens' Oil & Gas Co.,* 14 Pa. Superior Ct. 167; *James v. Kurtz,* 23 Pa. Superior Ct. 304), but if it was an assignment, and if the undisclosed transferees as principals received the beneficial enjoyment of the property, as averred, then they are, in terms, responsible. . . . Nor do we see merit in the suggestion that the relation of the parties was altered because the Associates, Inc., provided in its assignment for additional compensation to it, running over 21 years, retaining the power to reënter if default occurred: *Lloyd v. Cozens,* 2 Ashmead 131. The transaction is still to be treated as an assignment, with the incidents flowing therefrom, though such a reservation appears as shown by the cases cited by appellees: *Gillette Bros. v. Aristocrat Restaurant,* 239 N. Y. 87; *Sexton v. Chi-*

*cago Storage Co.*, 129 Ill. 318; *Stewart v. Long Island R. R. Co.*, 102 N. Y. 601."

The issue here is whether by the written agreement dated January 26, 1922, privity of estate was created between plaintiffs' predecessor trustee and the defendants' predecessors. If it was so created, the obligation to pay rent created in the instrument in writing dated November 28, 1921, is the defendants', for a covenant to pay rent runs with the land. If a substitution of tenants took place, through the acts and agreements of lessee and transferee, so that appellants became entitled to the beneficial enjoyment and privileges of the estate created by the original lease to Realty Associates, Inc., and acquired this subject to practically the same set of conditions as were originally annexed to the lease in the lessor's favor, then they must be held liable for nonpayment of rent. Minor modifications of these original conditions, arising from the transfer by the lessee to appellants, which do not substantially diminish the right of beneficial enjoyment granted by the lease, will not affect liability, because they do not preclude privity of estate.

One of the determining factors in a problem like this is whether the transferee's rights in the leasehold estate were acquired by assignment or sublease. If the former, it is said that privity of estate will arise between the lessor and the assignee of the lease, and the assignee may be sued for rent by the lessor; if the latter, there is no privity and the sublessee cannot be held liable to the lessor. A lease is a conveyance conditioned upon the performance by the grantee of certain covenants. As stated by Chief Justice GIBSON, in *Offerman v. Starr*, 2 Pa. 394, 396: "A grant of the use and possession, in consideration of something to be rendered, is exactly what constitutes a lease of the thing to be possessed." See also *Del., L. & W. R. R. Co. v. Sanderson*, 109 Pa. 583, 1 A. 394; 35 C. J. 1140; 2 Bouvier's Law Dict. (Rawle's Third Revision) 1887. When the lessee transfers to an-

other his interest in the leasehold estate created by the original lease, such transfer is likewise subject to covenants and conditions, which may be the same as or quite different from those of the original lease. If the party taking such a transfer or conveyance receives substantially the same beneficial interest or right of beneficial enjoyment of the leasehold estate as that held by the lessee before him, and takes it subject to substantially the same conditions and covenants as those to which the lessee was subject, so far as the right to beneficial enjoyment is concerned, the transferee is then considered as being in privity of estate with the lessor, the conditions or covenants are said to run with the land, and the transferee is held to be liable upon them directly to the lessor.

The enforcement of this principle does not demand production of a muniment of title to bind the transferee. As the Superior Court stated in *McClaren v. Citizens' Oil & Gas Co.,* supra, 14 Pa. Superior Ct. 167, 172: "The privity of estate which induces the liability of the assignee is the actual or beneficial enjoyment of the premises. It is not necessary that the legal title shall be, or shall continue, in him who is to be held because of privity of estate. One who has a beneficial interest in the estate created by the lease, or enjoys the profits thereof, or has a right to enjoy such profits, is in privity of estate, as the successor to the title of the lessee: *Wickersham v. Irwin,* 14 Pa. 108; *Thomas v. Connell,* 5 Pa. 13; *Hannen v. Ewalt,* 18 Pa. 9. 'It is not necessary that he should actually receive profits, or be in the actual possession of the land; it is sufficient that he is the owner of the equitable interest and in the constructive possession.' " " 'The law regards substance, not form, and looks to the real transfer of property, not a mere form of conveyance in which the legal title is in one and the equitable title in another' ": *Berry v. McMullen,* 17 S. & R. 84.

The application of the principles cited follow the preliminary determination whether the instrument of conveyance was an assignment or a sublease. That determination has for its basic factor a finding as to whether the conveyance was taken subject only to the conditions and covenants in favor of the lessor, as provided in the original lease, or subject to such additional and new terms and conditions, in favor of the transferring lessee, as to make the conveyance a substantial departure from the terms of the lease and to withhold from the transferee the beneficial interest the lessee possessed.

All our decisions show that privity of estate cannot exist without beneficial enjoyment of the property or the right to such enjoyment. This question has often arisen in the case of assignments of ground rents: *Wickersham v. Irwin,* supra; *Thomas v. Connell,* supra; *Hannen v. Ewalt,* supra; *Berry v. McMullen,* supra. In *Wickersham v. Irwin,* supra, 14 Pa. 108, 110, this court said: "The privity of estate which induces personal liability, is the actual or beneficial enjoyment of the premises, or the right of possession and enjoyment. When there is neither, no personal liability can arise." And in *Berry v. McMullen,* supra (p. 88), it was stated that where a beneficial interest exists, "there exists the privity of estate, which alone is necessary to sustain covenant." Other cases have involved simple leases for specified terms. Such was *Morgan v. Yard,* 12 W. N. C. 449, a decision of this court, where it was pointed out that liability springs not from any contractual relationship, but from privity of estate. See also *Negley v. Morgan,* 46 Pa. 281, 285.

On the other hand, the transferee of the leasehold estate may enjoy the beneficial interest, but its transfer may be of so limited a character that the complete substitution of tenants is lacking, so that no privity of estate is created and liability on the covenant to pay rent cannot be imposed. This situation may result from the creation of new conditions and restrictions in the trans-

fer, or the retention by the lessee of a right of entry, of a character sufficiently material to prevent the existence of privity of estate. Such was the case in *McClaren v. Citizens' Oil & Gas Co.*, supra, and also in *Drake v. Lacoe*, supra. In *Hartley v. Phillips*, 198 Pa. 9, 47 A. 929, the person sued was the *cestui que trust* of the lessee, an active trustee, who retained the beneficial enjoyment of the leasehold estate after declaring a trust for the defendant and others, who had never been in possession of the property leased. Clearly no privity of estate existed between lessor and beneficiary, which would subject the latter to a claim for rent.

In the light of the foregoing, the question in the present case is whether appellants were so substituted as tenants under the lease that they must be held bound by privity of estate to pay the rent reserved to the lessor. We hold that they were so substituted, that privity of estate existed, and they are liable to appellees. Admittedly appellants acted throughout, and with the knowledge of all concerned, as the principals of Gross, the transferee. To whatever he became entitled, appellants were entitled. By the agreement of January 26, 1922, the lessee assigned all its right, title and interest in the leasehold estate to Gross. He received the full balance of the term of 99 years, which had then scarcely begun, and agreed to perform all the covenants and conditions of the lease, including, of course, the covenant to pay rent. Throughout the instrument reference is made to it as an assignment and Gross is termed the assignee. It differs in no way from the ordinary assignment of lease, so far as quantity of the estate granted is concerned, except in two particulars. One is the assignee's covenant to pay the lessee, his assignor, 21 annual installments of $7,500 each as consideration for the assignment. The other is the stipulation that upon default of the assignee in making such payments to the lessee or in performance of any of the covenants and conditions of the lease, the lessee shall "have the right

to cancel this assignment and enter and retake possession of the premises." Appellants' position is that these two conditions annexed to the terms of the original lease were such additional covenants or limitations on the estate transferred as prevented privity of estate from arising between lessor and assignee. Whatever right of beneficial enjoyment the lessee possessed passed to appellants by the lessee's conveyance to Gross and by virtue of the relationship of agent and principal, respectively, which existed between him and appellants. The additional stipulations in favor of the lessee, the right of entry on default and the compensation to be paid to the lessee (whether the latter be considered additional rent or merely consideration for the assignment), detracted in no material respect from the actual beneficial enjoyment, or the right thereto, formerly possessed by the lessee and transferred to appellants. The departure from the terms of the original lease was without significance as affecting the right of beneficial enjoyment. The legally operative facts compel the conclusion that privity of estate was created and liability for rent necessarily follows. Concerning the instrument of transfer, the agreement of January 26, 1922, it clearly operated as an assignment, and the additional conditions or limitations which it contained did not convert it into a sublease.*

---

* The authorities are not entirely in harmony with the view here adopted, which is apparently the law in New York, Illinois, Minnesota and Missouri; see the cases cited from other jurisdictions in the passage quoted supra from *Ottman et al. v. Nixon-Nirdlinger et al.; St. Joseph & St. L. R. R. Co. v. St. Louis I. M. & S. Ry. Co.,* 135 Mo. 173, 36 S. W. 602; *Craig v. Summers,* 47 Minn. 189, 49 N. W. 742. In Minnesota a mere equitable assignee has been held liable for rent: *Minnesota Loan & Trust Co. v. Medical Arts Bldg. Co.* (Minn.), 255 N. W. 85; 19 Minn. Law Rev. 344. See also recent discussions of the question in: 5 Fordham Law Rev. 177; 11 Temple L. Q. 85; 30 Ill. Law Rev. 538; 79 U. of Pa. Law Rev. 357. Our decision herein and in the prior *Ottman Case,* supra, granting recovery against the unnamed principal, has

The considerations mentioned preclude the avoidance of personal liability, in cases such as this, by the adoption of what the parties term the "straw man device," whereby an assignment of the lease is taken in the name of a third party as agent or nominee. The liability here imposed is dependent upon privity of estate, not on a contractual relationship. By a special exception to the ordinary doctrine of principal and agent, a real owner of real estate is exempted from liability on his nominee's bond, but this rule of law requires no extension to the facts here involved. Even an unregistered owner is held liable for taxes to the taxing authority and to a mortgagee who has paid them: *Pennsylvania Company, Etc., Trustee, v. Bergson*, 307 Pa. 44, 159 A. 32; *North Phila. Trust Co. v. Heinel Bros., Inc.*, 315 Pa. 385, 172 A. 692.

Appellants assign as error the failure of the court below to strike from the judgment as entered the item of taxes paid by appellees. The argument advanced is that under the terms of the lease the taxes which the lessors were compelled to pay became "due and payable . . . as additional rent with the next installment of the annual quarterly rent which shall become due and payable after such payment by the lessors," but not before. The lessors, having paid the taxes in May, 1928, evicted appellants on June 28, 1928, three days before the "next installment" of rent fell due on July 1st. Hence liability to pay rent, it is said, terminated on June 28th when eviction took place, and the taxes previously paid by the lessors never became due from appellants as part thereof. The argument is without weight, however, the provision quoted being a specification with reference only to the time when a previously existing liability became due and payable. The liability was created when appellees paid the taxes in May, and after July 1, 1928, the

---

recently been followed, with express approval of the liability now imposed, in *Everett et al. v. Sexton & Co.*, 280 Ill. App. 350 (petition for leave to appeal denied by the Supreme Court of Illinois).

amount so paid was collectible from appellants. These assignments of error are overruled.

Appellants' last contention is that the court below erroneously charged the jury, in giving binding instructions for plaintiffs, that Greenfield & Company, in acting as rental agent and depositary of the lease, did so for itself and its associates as principals, and not as agent for the lessee and Gross, the nominal assignee, under a strict construction of the terms of the assignment. A verdict having been directed, what the trial judge stated to the jury in explanation of the course which he followed is material only as showing the theory on which the case was decided. The assignments of error covering this point are thus tantamount to appellants' general complaint, that the evidence failed to show as a matter of law the fact that appellants were in possession of the premises receiving the full right of beneficial enjoyment. Judge LEWIS, of the court below, ably disposed of this contention as follows: "It is freely admitted by defendants that Albert M. Greenfield & Company operated the premises. Their contention is that this was done purely in the character of escrow agent, and that hence no inference can be drawn that this firm was acting as a principal. We cannot so construe the evidence. As we view the situation, the only inference which may be drawn therefrom is that Albert M. Greenfield & Company was acting for itself and the other two investors as principals, and to a certain extent for the Realty Associates, Inc., and we have so ruled as a matter of law."

All the assignments of error are overruled.

The judgment is affirmed.

CONCURRING OPINION BY MR. CHIEF JUSTICE KEP-HART:

I concur in the conclusion of the majority only for the reason that a majority of this court laid down in *Ottman et al. v. Nixon-Nirdlinger et al.*, 301 Pa. 234, the

principle of law to control the trial of this case when it was remanded to the court below with a procedendo. That opinion stated the law of the case. The rule of liability of undisclosed principals in privity of estate, as stated in the opinion just handed down, is one of the liabilities that "straw" transactions are intended to guard against.

Mr. Justice DREW and Mr. Justice STERN join in this concurring opinion.